In the Matter of FEDERAL INSURANCE COMPANY, Respondent, v
JAY S. WATNICK et al., Appellants. (Proceeding No. 1.)

In the Matter of FEDERAL INSURANCE COMPANY, Respondent, v
JAY S. WATNICK et al., Appellants. (Proceeding No. 2.)

Second Department, January 15, 1992

**APPEARANCES OF COUNSEL**

*Shayne, Dachs, Stanisci, Corker & Sauer (Norman H. Dachs and Jonathan A. Dachs* of counsel), for appellants.

*Bertram Herman, P. C.,* for respondent.

OPINION OF THE COURT

KUNZEMAN, J. P.

This appeal arises from an automobile accident in the province of Quebec, Canada, in which two New York residents, the appellants herein, were injured when their car collided with a vehicle operated by a Quebec resident. The primary issue presented is whether the Quebec Automobile Insurance Act (Quebec Rev Stats ch A-25), the insurance reparation scheme which covered the offending vehicle, precludes the appellants from recovering damages under the uninsured and underinsured motorist endorsements of their own motor vehicle liability insurance policy.

In September 1988 the appellants Jay and Marianna Watnick, residents of New York State, took their children on a trip to Canada. While driving through St. Agathe in the province of Quebec, their vehicle was struck by a vehicle operated by Jay Anderson, a Quebec resident. The appellants were severely injured.

At the time of the accident, there was in effect on the appellants' vehicle a policy of motor vehicle liability insurance issued by the petitioner Federal Insurance Company, a New York State insurance carrier. The policy contained an uninsured motorist endorsement in the statutorily prescribed amounts of $10,000 and $20,000 (see, Insurance Law § 3420 [f] [1]; Vehicle and Traffic Law § 311 [4] [a]) and an optional supplementary uninsured motorist endorsement (denominated "underinsured" in the subject policy) providing for the statutory maximum limit of coverage of $300,000 (see, Insurance Law § 3420 [f] [2]).

Anderson's vehicle was insured for bodily injury liability under the Quebec Automobile Insurance Act (hereinafter QAIA), a mandatory system of insurance reparations administered by the provincial government of Quebec. The program affords bodily injury coverage to all motorists using a public highway within the province. Through applications made to its Automobile Insurance Board (the "Régie"), the QAIA compensates nonresident claimants to the extent they are not responsible for the accident (see, QAIA § 8) to a maximum of $20,000 (see, QAIA § 44). The appellants applied to the Régie which denied Marianna's claim, finding her to be 100% responsible for the accident. Jay's claim is apparently still pending.

The appellants also filed claims with the petitioner insurer

under their uninsured and underinsured motorist endorsements. However, the petitioner denied coverage and thereafter commenced the instant proceedings in the Supreme Court, Nassau County, seeking to stay arbitration of both claims. Concluding that the offending vehicle was neither "uninsured" nor "underinsured", the court granted the insurer's applications and stayed arbitration.

On appeal, the appellants contend that the offending vehicle was "uninsured" in that Quebec's insurance program is not "a bodily injury liability bond or policy" within the meaning of New York's Insurance Law. We disagree. Insurance Law § 3420 (f) (1), which requires that an uninsured motorist endorsement be included in all motor vehicle liability policies, is part of New York's scheme of compulsory automobile liability insurance which was enacted to recompense persons who are injured at the hands of financially irresponsible motorists *(State-Wide Ins. Co. v Curry,* 43 NY2d 298; *Matter of Neals v Allstate Ins. Co.,* 34 AD2d 265; *see,* Insurance Law §§ 5201, 5202 [j]). A financially irresponsible motorist is one who maintains less than the $10,000/$20,000 bodily injury coverage required by Vehicle and Traffic Law § 311 (4) (a). The offending motorist here was not "financially irresponsible". He was covered by the QAIA for any bodily injury he might have caused to others in an automobile accident and, in fact, was covered in an amount twice that of New York's minimum requirement.

Nor is the offending vehicle "uninsured" simply because the coverage is provided by a governmental reparation program rather than by a policy issued by a private carrier, as the appellants suggest. An "uninsured motor vehicle" (Insurance Law § 5202 [d]) is defined as a vehicle as to which there is no "proof of financial security" (Insurance Law § 5202 [c]) or "proof of ability to respond in damages for liability arising out of the ownership, maintenance or use of a motor vehicle as evidenced by an owner's policy of liability insurance" (Vehicle and Traffic Law § 311 [3]; *see,* Vehicle and Traffic Law § 311 [4] [a]). The QAIA coverage applicable to the offending vehicle, being tantamount to an "owner's policy of liability insurance" (Vehicle and Traffic Law § 311 [4] [a]) and clearly enabling Anderson "to respond in damages" (Vehicle and Traffic Law § 311 [3]) constitutes the requisite proof of financial security.

Furthermore, New York's statutory scheme presupposes that no other liability coverage exists to compensate the victim *(see, State-Wide Ins. Co. v Curry,* 43 NY2d 298, *supra).*

In *Curry,* the Court of Appeals held that a vehicle insured by an insolvent carrier was not uninsured inasmuch as the victim could look to the Property and Liability Insurance Security Fund (now the Property Casualty Insurance Security Fund *[see,* Insurance Law art 76]), a statutorily created and governmentally administered program for the payment of claims against insolvent insurers. The court reasoned that where the injured person may look to another fund, there is no need to protect him under the uninsured motorist endorsement. The same reasoning applies to the program of insurance at issue in this case.

Thus, while perhaps not technically a "liability bond" or a "policy", we hold that the QAIA provides the equivalent coverage for the purposes of the uninsured motorist statutes and the appellants' policy so as to preclude the application of the uninsured motorist endorsement. To hold otherwise would clearly frustrate the salutary purpose of New York's statutory scheme. "[T]he interpretation of statutes relating to uninsured motorist coverage must not be caught up in narrow and technical analysis[, but] must be interpreted as a whole, giving the words a meaning which serves rather than defeats the over-all legislative goals" *(Matter of Allstate Ins. Co. v Shaw,* 52 NY2d 818, 820).

■ ■ While the Supreme Court thus properly stayed arbitration of the appellants' uninsured motorist claim, we reach a different conclusion as to the underinsured motorist claim.

■ The appellants' policy, in compliance with Insurance Law § 3420 (f) (2), defines an underinsured vehicle as one to which a bodily injury liability bond or policy applies but where its limit of liability is less than than the limit of liability provided in the appellants' policy. Because the limit of the QAIA bodily injury liability coverage is less than that provided under the appellants' underinsured motorist endorsement, the offending vehicle is "underinsured" for the purposes of these proceedings *(see generally, Maurizzio v Lumbermens Mut. Cas. Co.,* 73 NY2d 951; *Reichel v Government Employees Ins. Co.,* 66 NY2d 1000).

The appellants contracted for up to $300,000 in coverage to protect against precisely the unfortunate circumstances in which they now find themselves. We find untenable the petitioner's position that nonetheless, due to the fortuitous event of the accident occurring in Quebec, the appellants' sole recourse lies with the QAIA. While QAIA § 4 provides that it

is an exclusive remedy, we do not read this provision as barring a nonresident claimant from seeking excess damages from his or her own private insurer under a contract of insurance issued in New York *(see, Thomas v Hanmer,* 109 AD2d 80). Indeed, the same section of the QAIA states that "[n]othing in this section limits the right of a victim to claim an indemnity under a private insurance scheme, regardless of who is at fault" (QAIA § 4).

Moreover, the appellants' policy coverage expressly includes the provinces of Canada, the insurance laws of which the petitioner insurer is presumed to have knowledge. The petitioner should not be permitted to collect premiums for this coverage and then deny coverage when a claim is made. Accordingly, we reverse the Supreme Court's order staying arbitration of the appellants' underinsured motorist claim.

Because the appellants' policy, pursuant to Insurance Law § 3420 (f) (2), requires them to exhaust other applicable bodily injury liability policies as a condition precedent to recovery under the underinsured motorist endorsement, the petitioner is entitled to a setoff of any recovery the appellant Jay Watnick may receive under the QAIA. We note that to expedite the arbitration, Jay Watnick has agreed to set off the maximum amount of $20,000 pending the Régie's determination.

EIBER, MILLER and RITTER, JJ., concur.

Ordered that the order dated August 1, 1989, is affirmed; and it is further,

Ordered that the order dated January 9, 1990, is reversed, on the law, the petition to stay arbitration of the underinsured motorist claim is denied, and the parties are directed to proceed to arbitration of that claim; and it is further,

Ordered that the appellants are awarded one bill of costs.