OPINION OF THE COURT
Smith, J.
This appeal arises from a car accident that occurred in the Province of Quebec, Canada. On September 6, 1988, Jay and Marianna Watnick, residents of New York State, were driving through St. Agathe, Quebec, when their automobile was struck by a vehicle operated by Jay Anderson, a resident of Quebec. Jay and Marianna Watnick were severely injured.
When the accident occurred, the Watnicks were insured under a motor vehicle liability policy issued by Federal Insurance Company, a New York State insurance carrier. The policy contained an uninsured motorist endorsement and an optional supplementary uninsured motorist endorsement (denominated "Underinsured Motorists Coverage”) in the single limit of $300,000 (see, Insurance Law § 3420 [¶] [1], [2]; Vehicle and Traffic Law § 311 [4] [a]). The purpose of the uninsured motorist endorsement was to " 'provid[e] coverage to insured persons who suffer automobile accident injuries at the hands *543 of financially irresponsible motorists’ ” (see, Rowell v Utica Mut. Ins. Co., 77 NY2d 636, 640). The underinsured motorist endorsement provided protection to a covered person for bodily injury sustained in an automobile accident where the applicable bodily injury liability bond or policy provided coverage that was less than the limit of the subject policy. Under the policy in this case and the applicable section of the Insurance Law, Federal was obligated to pay underinsured motorist coverage only after the limits of liability under any applicable bodily injury liability bonds or policies had been exhausted by payment of judgments or settlements (see, Insurance Law § 3420 [¶] [2]). Although the underinsured motorist endorsement in the insurance policy allowed a setoff for any amount paid or payable under workers’ compensation, the endorsement allowed Federal to reduce the limit of bodily injury liability only by sums paid by or on behalf of persons or organizations who might be legally responsible. The endorsement did not permit Federal to reduce the limit of bodily injury insurance coverage by the maximum amount payable, as opposed to paid, under applicable bodily injury liability insurance policies. The policy allowed either party to make a written demand for arbitration if the parties did not agree (1) whether the covered person was legally entitled to recover damages, or (2) as to the amount of damages.
Anderson’s vehicle was insured for "bodily injury” liability under the Quebec Automobile Insurance Act (QAIA), a mandatory system of insurance reparations administered by the provincial government of Quebec. That program affords insurance coverage to all "owners” of road vehicles who use a public highway within the Province of Quebec (see, QAIA §§ 1.1, 17). Through applications made to its automobile insurance board, the Regie, the QAIA compensates nonresident claimants "to the extent that [they are] not responsible for the accident” (see, QAIA § 8) to a maximum of $20,000 (see, QAIA § 44). Claimants aggrieved by a determination by an officer of the Régie regarding compensation for bodily injury may appeal to the Appeals Section of the Régie and then to the Commission des Affaires Sociales (see, QAIA § 56). The record indicates that in addition to bodily injury coverage under the QAIA, the Anderson vehicle was insured by Commerce Insurance Company, an insurance company not licensed to do business in New York.
Jay and Marianna Watnick sought compensation from the Régie for their injuries. The Régie awarded Jay Watnick *544 $82.12 * for suffering and loss of enjoyment of life and denied Marianna Watnick’s claim, finding her 100% at fault for the accident. The Watnicks did not appeal from the Régie’s determinations.
Prior to receiving the determination from the Régie regarding Jay Watnick’s claim, the Watnicks filed claims with Federal under the uninsured and underinsured motorist endorsements of the motor vehicle liability policy. Federal denied coverage and commenced this proceeding, seeking to stay arbitration of both claims. Federal contended that the offending vehicle was neither uninsured or underinsured, as defined by the statutory and decisional laws of New York. The Watnicks argued that the offending vehicle was uninsured because the QAIA was not a "bodily injury liability bond or policy” within the meaning of New York’s Insurance Law.
In separate orders, Supreme Court, Nassau County, concluded that the offending vehicle was neither uninsured nor underinsured, and granted Federal’s applications to stay arbitration of both claims. The Appellate Division affirmed as to the uninsured claim but reversed as to the underinsured claim, denied Federal’s application to permanently stay arbitration of the underinsured motorist claim, and directed the parties to proceed to arbitration on that claim (see, 176 AD2d 38). The Court also allowed Federal to set off "the maximum amount [that Jay Watnick may receive] pending the Regie’s determination,” to satisfy the statutory requirement of exhaustion by payment and "expedite the arbitration” (see, id., at 43). The Appellate Division held that since the limit of the QAIA bodily injury liability coverage was less than that provided under the Watnicks’ underinsured motorist endorsement, the offending vehicle was underinsured (see, id., at 42).
The issues presented on appeal are whether the Watnicks may recover damages under the uninsured and underinsured motorist endorsements in their vehicle liability insurance policy with Federal.
Federal does not challenge the conclusion by the prior courts that the Anderson vehicle was not uninsured. However, the Watnicks maintain that those courts erred in concluding that the offending vehicle was not "uninsured” within the meaning of the Insurance Law and the subject policy. The *545 Watnicks argue that the legislative purpose of providing maximum and expeditious protection to the innocent victims of financially irresponsible motorist coverage in New York mandates liberal construction of the statute and the policy, and the conclusion that the offending vehicle was either uninsured or underinsured.
We agree with the conclusion reached by the prior courts that the Anderson vehicle was not uninsured, and the Watnicks cannot recover under the uninsured motorist endorsement in their vehicle liability policy with Federal. Insurance Law § 3420 (f) (1) requires that every motor vehicle insurance policy contain an uninsured motorist endorsement under which the insurer agrees to pay an insured any damages caused by an owner or operator of an uninsured motor vehicle. An "uninsured motor vehicle” is one as to which no proof of financial security exists, as defined by subdivision (3) of section 311 of the Vehicle and Traffic Law (see, Insurance Law § 5202 [c], [d]). Section 311 (3) of the Vehicle and Traffic Law defines the term "proof of financial security” to mean proof of ability to respond in damages for liability arising out of the ownership, maintenance or use of a motor vehicle as evidenced by an owner’s policy of liability insurance. An "owner’s policy of liability insurance” provides insurance against loss from the liability imposed by law for damages because of bodily injury to or death of any person arising out of the ownership, maintenance, use, or operation of a specific motor vehicle or motor vehicles within the State of New York, or elsewhere in the United States in North America or the Dominion of Canada (see, Vehicle and Traffic Law § 311 [4]).
Here, the QAIA provides bodily injury insurance coverage to all owners of road vehicles using a public highway in the Province of Quebec. Therefore, the Appellate Division correctly concluded that the QAIA is tantamount to an owner’s policy of liability insurance. Under the QAIA, Anderson can respond in damages, up to $20,000, for any bodily injury he may cause to others in an automobile accident on a Quebec highway. Thus, the QAIA provides Anderson with proof of financial security. In addition, the record indicates that Anderson’s vehicle was insured by Commerce Insurance Company. As such, the prior courts correctly held that Anderson’s vehicle was not uninsured and granted Federal’s application to stay arbitration of the Watnick’s uninsured motorist claim.
However, we disagree with the conclusion reached by the *546 Appellate Division that the Watnicks should arbitrate their underinsurance claim with Federal.
Federal contends that since the prior courts concluded that the offending vehicle was not "uninsured,” the Watnicks are not entitled to underinsured protection until they each have "exhausted by payment” the insurance for pain and suffering afforded under the QAIA. Relying on Matter of Valente v Prudential Prop. & Cas. Ins. Co. (77 NY2d 894), the Watnicks argue that a $20,000 "setoff” would make Federal whole and eliminate the need for the "exhaustion] by payment” requirement in the subject policy. Furthermore, the Watnicks contend, breach of the contractual duty to exhaust by payment gives rise only to a claim for damages, not vitiation of the insurance policy.
The underinsured motorist endorsement in the Watnicks’ motor vehicle insurance policy with Federal, provides:
"We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements” (emphasis added).
Insurance Law § 3420 (f) (2), which requires insurers to provide, at the option of the insured, supplementary uninsured (underinsured) motorist insurance for bodily injury liability up to the limits of the insured’s own bodily injury liability policy, provides:
"As a condition precedent to the obligation of the insurer to pay under the supplementary uninsured motorists insurance coverage, the limits of liability of all bodily injury liability bonds or insurance policies applicable at the time of the accident shall be exhausted by payment of judgments or settlements” (emphasis added).
The clear language of the policy and statute requires the Watnicks to "exhaust * * * by payment” the limits of all applicable bodily injury insurance policies before Federal is required to pay pursuant to the underinsurance endorsement. Thus, the statutory scheme requires primary insurers to pay every last dollar, and requires plaintiffs to accept no less, prior to the initiation of an underinsurance claim.
The Regie awarded Jay Watnick $82.12, out of a possible $20,000, for the injuries he sustained in the automobile accident. The Régie denied Marianna Watnick’s claim, finding her *547 100% at fault for the accident. Neither Jay Watnick nor Marianna Watnick has "exhausted by payment” the limits of all applicable bodily insurance policies as required by the statute and the subject policy.
Matter of Valente v Prudential Prop. & Cas. Ins. Co. (77 NY2d 894, supra) provides no assistance to the Watnicks. In that case, the petitioner sustained serious bodily injuries when he was struck by an uninsured motor vehicle while on the job. The petitioner, an insured person, sought to recover for his bodily injuries pursuant to the supplementary uninsured motorist endorsement in the insurance policy issued by the insurer to the petitioner’s father. The policy provided supplementary uninsured motorist coverage in the amount of $100,000 and stated that the amount payable thereunder would be reduced by any amount paid or payable under workers’ compensation. The insurer contended that the amount payable under the supplementary uninsured motorist endorsement must be reduced by any workers’ compensation award. In allowing the insurer to reduce the petitioner’s recovery for pain and suffering by the amount payable under workers’ compensation, this Court held:
"The contract between the parties contains a standard clause which expressly provides for [the] ’offset,’ and the contract has been approved by the Commissioner of Insurance * * * Under these circumstances there is no basis for holding the contractual offset unenforceable with respect to the supplemental coverage * * *
"In the absence of * * * a statutory restriction, the court is bound to enforce the contract as written” (id., at 895-896).
Here, too, the underinsured motorist endorsement allowed Federal to reduce the limit of bodily injury coverage by all sums paid or payable under workers’ compensation. However, the endorsement allowed Federal to reduce the limit of bodily injury coverage only by all sums paid by or on behalf of persons or organizations who may be legally responsible. The endorsement did not permit Federal to reduce the limit of bodily injury coverage by the amount payable under any applicable bodily injury insurance policy. Any agreement regarding a setoff of applicable injury insurance could have been included in the policy endorsement, as it was with workers’ compensation. None existing, the Appellate Division *548 has rewritten the endorsement by allowing Federal to "set off” the maximum amount recoverable by Jay Watnick under the QAIA pending a determination by the Régie. The Watnicks did not "exhaust * * * by payment” the limits of the QAIA policy before seeking compensation from Federal, as required by the policy and the Insurance Law. Thus, they are not permitted to arbitrate their underinsured endorsement claim.
Accordingly, the order of the Appellate Division should be modified, with costs to petitioner, by reversing so much thereof as denied Federal’s application to permanently stay arbitration of the Watnick’s underinsured motorist claim and granting that application and, as so modified, affirmed.
Acting Chief Judge Simons and Judges Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order modified, with costs to petitioner, by reversing so much of the Appellate Division order as pertains to proceeding No. 2 and reinstating the order of Supreme Court, Nassau County, in proceeding No. 2 and, as so modified, affirmed.

 There is a reference to cumulative payments to Jay Watnick of $4,321.86 (see, record, at 224). These payments apparently include sums in addition to those for suffering and loss of enjoyment of life.