OPINION OF THE COURT
John S. Lockman, J.
In this consolidated proceeding pursuant to CPLR article 75 to stay arbitration of an uninsured motorist claim, the court is called upon to interpret a provision of Rule 35-D of the Regula *452 tions of the Department of Insurance (11 NYCRR 60-2.0 et seq.).
In this proceeding petitioner seeks to stay two uninsured motorist arbitrations on the ground that a vehicle owned by Global Ambulette, Inc. (Global Ambulette), which was involved in the accident on May 27, 1996, is not “uninsured” within the meaning of Insurance Law § 3420 (f) (1) or Regulation 35-D. Global Ambulette was insured by New York Merchant Bakers Insurance Company from February 28, 1996 through February 27, 1998, and thus the accident occurred during the period of coverage. Ordinarily, a finding of insurance coverage would dispose of an article 75 proceeding and a permanent stay of arbitration would issue. Here, however, New York Merchant Bakers Insurance Company (hereafter Merchant Bakers) became insolvent subsequent to the accident date and is presently in a state of insolvency.
The question to be decided here is whether the subsequent insolvency renders the alleged offending vehicle “uninsured” for purposes of arbitration under the Silber respondents’ policy of insurance, where, as here, the Silbers have an available remedy through the Public Motor Vehicle Liability Security Fund. It is the duty of the Security Fund to satisfy allowed claims of injured parties remaining unpaid by reason of Merchant Bakers’ insolvency, as Merchant Bakers was a domestic insurer required to contribute to the Fund pursuant to Insurance Law § 7604 (b) (2).
Reference to the regulations of the Insurance Department, to the Insurance Law, and to case law interpreting both is necessary to resolve the dispute. Regulation 35-D (11 NYCRR 60-2.0 et seq.) requires an uninsured motorist endorsement in every policy issued in this State, and defines the term “uninsured motor vehicle” in relevant part as follows:
“(c) Uninsured Motor Vehicle. The term ‘uninsured motor vehicle’ means a motor vehicle that, through its ownership, maintenance or use, results in bodily injury to an insured, and for which * * *
“(3) there is a bodily injury liability insurance coverage or bond applicable to such motor vehicle at the time of the accident, but * * *
“(in) the insurer * * * is or becomes insolvent.” (11 NYCRR 60-2.3.)
Were the language of the endorsement controlling on its face there would be nothing here to decide. However, the term “un *453 insured motor vehicle” is a term of art, and its meaning must be understood by reference not only to the regulations, but also to the statutes upon which they are based and any judicial interpretation of those statutes (Morris v Progressive Cas. Ins. Co., 662 F Supp 1489, 1493 [SD NY]).
Insurance Law § 3420 (f) (1) provides that every policy insuring against loss arising out of a motor vehicle accident must contain a provision “whereby the insurer agrees [to] pay to the insured” limited damages on account of injury or death caused by an owner or an operator of “an uninsured motor vehicle, unidentified motor vehicle which leaves the scene of an accident, a motor vehicle registered in this state as to which at the time of the accident there was not in effect a policy of liability insurance, a stolen vehicle, a motor vehicle operated without permission of the owner, an insured motor vehicle where the insurer disclaims liability or denies coverage or an unregistered vehicle”. The statute, unlike the regulation, contains no reference to insolvent insurers. Nevertheless, through judicial interpretation, insolvency of an insurer is an additional statutory ground which renders a vehicle uninsured under certain circumstances.
In State-Wide Ins. Co. v Curry (43 NY2d 298, 301) the Court of Appeals decided the question of whether a person involved in an automobile accident is an “uninsured motorist” within the meaning of subdivision (2-a) of section 167 of the Insurance Law (now § 3420 [1] [f]) “where the person is insured by a domestic insurer which becomes insolvent subsequent to the accident”. The Court rejected the argument that the two remedies, a Security Fund claim against an insolvent insurer and an uninsured motorist claim, "were alternative remedies and that a claimant could elect between them. The Court found the purpose of the uninsured motorist claim provided by subdivision (2-a) of Insurance Law § 167 “is to protect persons who are injured by financially irresponsible motorists by making available a $10,000 fund to which an injured person may look for compensation for his injuries” and that the statutory scheme “presupposes that no other liability coverage exists to compensate innocent victims of motor vehicle accidents” (State-Wide Ins. Co. v Curry, supra, at 302). The Court answered the insurance coverage question in the negative because when a domestic insurer becomes insolvent, an injured person may look to the Security Fund for compensation, and would have no need of the protection afforded by subdivision (2-a) of Insurance Law § 167. The Court found that an offending vehicle *454 subject to coverage by the Security Fund could not be classified as either an “uninsured motor vehicle” or an insured vehicle “where the insurer disclaims liability or denies coverage”, the only two categories available under subdivision (2-a) of section 167 (State-Wide Ins. Co. v Curry, supra, at 303).
In contrast is the law with regard to a nondomestic insurer which would not contribute to nor be covered by the Security Fund, and which the Court in Curry (supra) distinguished. In such cases the accident would give rise to an uninsured motorist claim, as the claimants could not seek compensation from the Fund (State-Wide Ins. Co. v Curry, 43 NY2d 298, 304, supra; Matter of Taub [MVAIC], 31 AD2d 378; Matter of Travis [General Acc. Group], 31 AD2d 20).
Thus insolvency is not the sole determinative factor in resolving the question of whether uninsured motorist coverage is available. If coverage under the Security Fund is available, there is no uninsured motorist coverage under the injured parties’ insurance policy. If coverage is not provided by the Security Fund, there is such uninsured motorist coverage. The statutory construction permitting resort to uninsured motorist coverage only if it is the exclusive remedy available predated enactment of Regulation 35-D, which does not distinguish between insolvent insurers which are covered by the Security Fund and those which are not. The language can be read to include all insolvent insurers, thus allowing a claimant to choose his remedy and proceed against the Fund or proceed against his own carrier.
Respondents urge this interpretation and aver that the regulation applies to all insurer insolvencies and permits arbitration of their uninsured motorist claim to proceed. Respondents argue that in enacting Regulation 35-D the Superintendent of Insurance must be deemed to have been aware of the case law prior to enactment, particularly as the Superintendent participated in Curry (supra) as amicus curiae. The court agrees that the Superintendent was aware of prior case law, but reaches a different conclusion from that fact. The court finds that the language used in Regulation 35-D was intended to incorporate the judicial gloss then in existence and to distinguish between covered and noncovered insolvencies. No other conclusion can be reached, as the Superintendent is without authority to overrule a judicial interpretation of a statute by the Court of Appeals.
The Superintendent has “broad power to interpret, clarify, and implement * * * legislative policy” (Breen v Cunard Lines *455 S. S. Co., 33 NY2d 508, 511). However this power is not without limitations. The Superintendent may prescribe regulations “to effectuate any of the powers given [to] him by law” (Matter of B. & R. Excess Corp. v Thacher, 37 Misc 2d 307, 309, affd 18 AD2d 1137), provided, however, that his regulations “are not inconsistent with some specific statutory provision” (Ostrer v Schenck, 41 NY2d 782, 785). The Court of Appeals has held that a vehicle for which the Security Fund provides coverage under Insurance Law § 7604 (previously § 330 [3], [4]) is not an uninsured motorist vehicle within the Insurance Law. While the Legislature may rewrite a statute to, in effect, overrule the Court of Appeals, the Insurance Superintendent is without such authority, notwithstanding his regulatory power. Respondents do not argue that this authority exists. And, in the absence of a legislative amendment subsequent to Curry (supra), the Superintendent could not enact a statutory regulation to include that which the Court of Appeals has excluded.
The court takes no issue with the rules of interpretation presented by respondents. However, the Court of Appeals has interpreted the meaning of the words uninsured motorist as used in the Insurance Law, and thus authority which cautions against judicial regulation under the guise of statutory interpretation (see, Lawrence Constr. Corp. v State of New York, 293 NY 634) has no application here. Insofar as the guidelines for review of agency determinations is concerned, there is no application of a specific term by an administrator for this court to review (see, Matter of Howard v Wyman, 28 NY2d 434). Respondents simply do not take into account the Court of Appeals ruling in Curry (supra) in their argument. The existence of a Security Fund to which an injured insured may look to seek recovery precludes resort to his or her own policy. To be considered uninsured under the New York statutory scheme presupposes that no other liability coverage exists (Matter of Federal Ins. Co. v Watnick, 176 AD2d 38, affd as mod 80 NY2d 539).
The authority relied upon by respondent from foreign jurisdictions is also inapposite. While other jurisdictions appear to permit an uninsured motorist claim when there is also a State guarantee or Security Fund, each case reveals that the holding is premised upon a statute which permits or requires an insured to first proceed against his or her own carrier before resort may be had to the State Fund (see, Bartee v R.T.C. Transp., 245 Kan 499, 781 P2d 1084; Henninger v Riley, 317 Pa Super 570, 464 A2d 469; Spearman v State Sec. Ins. Co., 57 *456 Ill App 3d 393, 372 NE2d 1008; Aetna Cas. & Sur. v Ohio Ins. Guar. Assn., 175 AD2d 621). Here there is no requirement for exhaustion of a claimant’s rights against his or her own insurer before resort may be had to the State Security Fund. Insurance Law § 7604 (a) provides for coverage by the Motor Vehicle Liability Security Fund if the insurer is insolvent “provided the insurer has made payments to the fund”. Global Ambulette’s insurer, Merchant Bakers, was licensed to do business in New York and was required to make payments to the Fund. Accordingly, respondents may proceed against the Fund, may not seek arbitration under their own policy, and a permanent stay of arbitration is granted. The further application by respondents to consolidate the above-captioned actions is granted.