■ MARC MARINOFF, Appellant, v NATTY REALTY CORP., Respondent. [792 NYS2d 491]—

In an action for specific performance of a contract to purchase real property, the plaintiff appeals from an order of the Supreme Court, Queens County (Price, J.), dated December 10, 2003, which denied his motion for leave to enter a default judgment against the defendant upon its failure to appear or answer the complaint, and granted the defendant's cross motion to vacate its default in answering the complaint and for leave to serve a late answer.

Ordered that the order is affirmed, with costs.

The plaintiff commenced this action on April 9, 2003, and

served the defendant under Business Corporation Law § 306 by delivering copies of the summons, verified complaint, and notice of pendency to the Department of State in Albany on May 5, 2003. Since the defendant was not personally served within the State of New York, it had until June 4, 2003, to answer (*see* CPLR 3012 [c]). By October 2003 the defendant had not done so. By notice dated October 2, 2003, the plaintiff moved for leave to enter a default judgment against the defendant under CPLR 3215, upon its failure to appear or answer the complaint. The defendant cross-moved to vacate its default and for leave to serve a late answer.

The defendant's cross motion was premised, at least in part, on CPLR 317, which does not require the movant to establish a reasonable excuse for the delay in moving for vacatur (*see Eugene Di Lorenzo, Inc. v Dutton Lbr. Co.*, 67 NY2d 138 [1986]; *Rifelli v Fireside Homes Corp.*, 152 AD2d 629 [1989]). Even if the defendant was required to make that showing, under the circumstances, the Supreme Court correctly concluded that the defendant established a reasonable excuse for its delay. Moreover, the time between the defendant's answering deadline and its cross motion for vacatur of its default (approximately five months), was relatively modest. Indeed, CPLR 317 allows a defaulting party who otherwise meets the statute's require-ments to defend the action within one year after obtaining knowledge of entry of the judgment, "but in no event more than five years after such entry" (CPLR 317). Here, no judg-ment has been rendered. In addition, there is no indication that the defendant was deliberately attempting to avoid notice of this action (*see Eugene Di Lorenzo, Inc. v Dutton Lbr. Co., supra* at 143; *Samet v Bedford Flushing Holding Corp.*, 299 AD2d 404, 405 [2002]).

It was not necessary for the defendant to establish the valid-ity of its defense as a matter of law in order to obtain vacatur of its default in answering. The defendant carried the burden of demonstrating a *potentially* meritorious defense (*see Eugene Di Lorenzo, Inc. v Dutton Lbr. Co., supra*; *Carnazza v Shoprite of Staten Is.*, 12 AD3d 393 [2004]; *Becker v University Physicians of Brooklyn*, 307 AD2d 243 [2003]). The Supreme Court providently exercised its discretion in concluding that the defen-dant carried its burden.

Accordingly, the Supreme Court correctly denied the plaintiff's motion for leave to enter a default judgment against the defen-dant upon its failure to appear or answer the complaint, and correctly granted the defendant's cross motion to vacate its default and for leave to serve a late answer. H. Miller, J.P., Schmidt, Ritter and Skelos, JJ., concur.

Crane, J., dissents and votes to reverse the order, grant the motion, and deny the cross motion in the following memorandum: On December 24, 2002, the plaintiff, Marc Marinoff as nominee for 38TS Realty, LLC, entered into a contract to purchase certain commercial premises from the defendant for the sum of $588,000. The plaintiff made a down payment of $30,000. The premises had previously been damaged by fire and a rider to the contract recited that the plaintiff was aware that the premises were "seriously fire damaged," that municipal violations had been issued, and that there was no valid certificate of occupancy. The plaintiff agreed to accept the premises "AS IS" and to take title subject to all violations and to bear the expense of remedying those violations. The defendant agreed to be responsible for all civil penalties that prevented the plaintiff from obtaining a building permit or dismissal of the violations. In a second rider, the defendant acknowledged that the plaintiff would be required to perform repairs and renovations to the premises and agreed to cooperate with the plaintiff and allow him to prepare and file a building permit application to restore the building. Finally, the contract provided that the defendant would not be required to spend any money to cure the violations.

The contract called for a closing date of February 15. By mutual agreement, the closing date was rescheduled to April 7, 2003. The plaintiff appeared on April 7th ready, willing and able to close; the defendant failed to appear. The closing was rescheduled for April 21st, time being of the essence, and again was rescheduled, on consent of both parties, for April 28, 2003. The defendant notified the plaintiff that it would not appear at the April 28 closing and requested yet another closing date. The closing was rescheduled twice in May. The plaintiff asserts that he was ready, willing, and able to close on both occasions in May, and that the defendant cancelled both closing dates.

The plaintiff filed a notice of pendency and commenced this action for specific performance on April 9, 2003. A copy of the summons and complaint was served on the defendant via the Secretary of State on May 5, 2003.

On July 25, 2003, the plaintiff forwarded a copy of the summons and complaint to Lester & Fontanetta, P.C., the attorneys for the defendant as listed in the contract of sale. On September 17, 2003, the plaintiff's counsel received a telephone call from Ira Cooper, Esq., the defendant's counsel. Cooper advised that the defendant was aware of the lawsuit and had asked the Cooper firm to become involved in the matter.

In October 2003 still having received no answer to the

complaint, the plaintiff moved to enter judgment pursuant to CPLR 3215 upon the defendant's failure to appear or answer the complaint. The defendant cross-moved to vacate its default in answering the complaint and for leave to serve an answer. In an affidavit in support of the motion, the defendant's president stated that there existed a reasonable excuse for the default and a meritorious defense to the action.

CPLR 5015 (a) provides that a party may be relieved from a judgment on the ground of "excusable default" (CPLR 5015 [a] [1]). A defendant seeking to vacate a default under this provision must demonstrate a reasonable excuse for its delay in appearing and answering the complaint and a meritorious defense to the action (see Eugene Di Lorenzo, Inc. v Dutton Lbr. Co., 67 NY2d 138, 141 [1986]).

A second provision for obtaining relief from a default judgment is found in CPLR 317. That section states, in part, that "[a] person served with a summons other than by personal delivery to him or to his agent for service designated under [CPLR] 318 . . . may be allowed to defend the action within one year after he obtains knowledge of entry of the judgment . . . upon a finding of the court that he did not personally receive notice of the summons in time to defend and has a meritorious defense." (CPLR 317.) A defendant is not required to show a "reasonable excuse" for its delay under CPLR 317 (see Eugene Di Lorenzo, Inc. v Dutton Lbr. Co., supra).

The defendant admitted that it did not receive the summons and complaint from the Secretary of State because its president relocated to Georgia "several years ago" and did not advise the Secretary of State of the new address for service of process. There is no per se rule that a corporation served through the Secretary of State, and which failed to update its address on file there, cannot demonstrate an "excusable default" under CPLR 5015 (see Eugene Di Lorenzo, Inc. v Dutton Lbr. Co., supra at 143). Courts should consider, among other factors, the length of time for which the address had not been kept current. I find that the defendant's admitted failure to notify the Secretary of State for "several years" of the change in its address for service of process to be unreasonable and insufficient to excuse its default under CPLR 5015 (see Kramer, Levin, Nessen, Kamin & Frankel v International 800 Telecom Corp., 190 AD2d 538 [1993]).

The defendant also failed to establish a meritorious defense. The defendant's president asserted that between the date originally set for the closing and the commencement of the plaintiff's action, the City of New York directed the plaintiff to

either demolish the premises or make the needed repairs. The City advised the plaintiff, who was present at hearings regarding the premises, that a failure to act would result in the City making the necessary repairs and filing a lien against the premises. The plaintiff's request for additional time before the City would act on its own was denied. The defendant's president averred that this required his corporation to engage the services of a contractor to perform the required work at a cost of approximately $120,000. The defendant asserted that the plaintiff agreed pursuant to the terms of the contract to be responsible for the cost of remedying the fire damage to the premises and was thus obligated to pay the contract price of $588,000 plus the cost of repairs in the sum of $120,000. Since the plaintiff refused the defendant's demand for reimbursement of the cost of repairs, the defendant refused to close title. Thus, the defendant argued that the plaintiff was not entitled to specific performance of the contract.

The defendant's argument is without merit. First, there is no provision in the contract or its riders requiring the plaintiff to reimburse the defendant for any repairs to the premises. True, neither the contract nor the riders obligated the defendant to perform any repairs. The fact that it undertook to perform those repairs, however, does not mean that the plaintiff had to pay for them without a contractual provision or other agreement reflecting such an arrangement. Furthermore, it is irrelevant that the City threatened to make the necessary repairs and file a lien against the premises if the plaintiff did not make those repairs. There is nothing to suggest that the City "forced" the defendant to make the repairs and the fact that the City threatened to make them did not obligate the defendant to perform this repair work. The defendant should have allowed the City to make the repairs and place a lien on the premises. Pursuant to his contract with the defendant, the plaintiff would have had to take title to the premises subject to the City's lien. Moreover, the defendant did not assert that it demanded of the plaintiff that he make these repairs. Instead, the defendant voluntarily performed the repairs. As a volunteer, it has no legal right to reimbursement from the plaintiff for the sums expended (see First Natl. Bank of Ballston Spa v Board of Supervisors of Saratoga County, 106 NY 488, 494 [1887]; Perlmutter v Timely Toys, 8 AD2d 834 [1959]; Harrington v Stallo, 169 App Div 786, 787 [1915]; Hubbard v Blanchard, 113 App Div 788, 789 [1906]; 82 NY Jur 2d, Payment and Tender § 82).

Second, the purported copy of the receipt from "Rankin Constuction" [sic] for partial payment for work performed on

the subject premises was dated April 28, 2003. In support of his motion, the plaintiff demonstrated that he was ready, willing, and able to close by submitting copies of checks dated April 7, 2003, for the balance due under the contract. Thus, the defendant undertook to pay for repairs to the premises after he had defaulted at the closing. Furthermore, the parties, through counsel, entered into a letter stipulation dated April 17, 2003, in which they agreed to adjourn the closing date from April 21st to April 28th. If it is true that the defendant was incurring expenses for repairs, it is odd that there is no mention in this letter stipulation of any work to be performed at the premises or any change to the contract price as a result of such work.

Third, the April 28th receipt from "Rankin Constuction" [*sic*], purportedly issued pursuant to a contract dated February 18, 2003, well before the April 7th closing date, reflects an alleged partial payment by the defendant in the sum of $80,000, with a balance due of $40,000. The defendant did not submit copies of cancelled checks establishing that it actually paid the amount reflected in the receipt. Thus, the defendant failed to establish that it paid for the repairs.

Finally, the fact that the performance of the repairs may have increased the value of the premises is not a meritorious defense to the plaintiff's demand to close title at the original contract price. An increase in the value of real property between the time the contract is entered into and the time when specific performance is sought, in and of itself, is not a sufficient ground for the denial of specific performance (*see EMF Gen. Contr. Corp. v Bisbee*, 6 AD3d 45, 55 [2004]; Shipley, Annotation, *Change of Conditions After Execution of Contract or Option for Sale of Real Property as Affecting Right to Specific Performance*, 11 ALR2d 390, § 1; 91 NY Jur 2d, Real Property Sales and Exchanges § 207).

In the Fourth Department case of *Liberta v Davis* (81 AD2d 752 [1981]), the premises were damaged by fire after the parties entered into the contract of sale but prior to the closing of title. The seller unilaterally undertook to restore the fire damaged premises to its former condition through the use of fire insurance proceeds (*see id.*). The Fourth Department held that the claim that the repairs significantly increased the value of the real property was no defense to the purchaser's action for specific performance and no legal basis on which to bottom a demand for an increase in the contract price (*see id.; cf. Stinaroff v Golden*, 184 AD2d 764, 765 [1992] [dismissing defaulting buyer's action for specific performance with an abatement of price for diminished value of the building the Town had demanded be demolished]).

The defendant in the case at bar could neither demand an increase in the purchase price nor seek reimbursement for repairs it voluntarily undertook to make.

Thus, the defendant failed to establish that its default should have been excused under CPLR 5015, and it presented no valid defense to the plaintiff's action for specific performance of the contract. Contrary to the majority's assertion, the defendant did not even have a potentially meritorious defense on this record. Accordingly, the defendant was not entitled to relief under either CPLR 5015 or 317. The plaintiff's motion for a default judgment should have been granted, and the defendant's cross motion should have been denied.