OPINION OF THE COURT
Daniel Palmieri, J.
This (the fourth in this case) application to vacate pursuant to CPLR 5015 this court’s decision and order dated January 13, 2006 is denied.
Although this application cannot be granted for want of an excuse for the default, it has nonetheless pointed out the difficulties that face the courts in deciding how bankruptcy affects the status of the allegedly offending vehicle in uninsured/ underinsured motorist arbitration. In the present case, the matter is further complicated by the fact that the accident did not take place in New York.
Respondents, who owned an automobile insurance policy with uninsured motorist coverage (UM coverage) issued by petitioner in New York, were passengers on a bus that was involved in an accident in the State of New Jersey. The bus company had insurance with Security Insurance Company, but with a deductible/self-insured retention of $250,000, which was the responsibility of the bus company. Thereafter, the bus company filed a petition in bankruptcy. Respondents do not state whether they have instituted an adversary proceeding in the Bankruptcy Court, whether any financial security was posted in any state to secure the deductible, or whether indemnification is available or has been claimed pursuant to the Motor Vehicle Accident Indemnification Corporation (MVAIC) Act in New York or under any comparable statute in any other state (see, MVAIC Act, Insurance Law § 5201 et seq.).
The respondents immediately made a claim for UM coverage to petitioner, reasoning that the bankruptcy of the bus company was equivalent to not having insurance, thus implicating the uninsured motorist coverage.
Petitioner instituted this proceeding on notice to respondents. Although there was no opposition from or appearance by respondents, a judgment of this court (Covello, J.) denied the petition as untimely. Notice of entry was also served on respondents. Petitioner then moved to reargue before another judge of this court.
Subsequent to the filing of the motion to reargue but before it was decided, respondents moved through their attorneys to lift the stay of arbitration.
*720 Both of the above motions remained undecided until assigned to this court subsequent to January 3, 2006.
The motion to reargue the earlier denial of the petition was granted without opposition, and upon reargument, arbitration was stayed. Notice of entry of the decision and order, dated January 13, 2006, was served on the respondents on or about March 9, 2006.
Respondents’ motion to lift the stay, which was made by their attorney, was denied for the reasons stated in this court’s decision and order dated February 17, 2006. It is not controverted that while petitioner’s motion to reargue and respondents’ motion to lift the stay were pending and undecided, petitioner’s attorney informed respondents’ attorney that the reargument motion was pending.
This motion seeks to vacate this court’s decision on the motion to reargue based on CPLR 5015 (a) (1). On such a motion, a party must demonstrate a reasonable excuse for its delay in appearing and a meritorious defense or claim (Eugene Di Lorenzo, Inc. v A.C. Dutton Lbr. Co., 67 NY2d 138 [1986]; see, Incorporated Vil. of Hempstead v Jablonsky, 283 AD2d 553 [2d Dept 2001]; Matter of Gambardella v Ortov Light., 278 AD2d 494 [2d Dept 2000]; Parker v City of New York, 272 AD2d 310 [2d Dept 2000]). Here, respondents have failed to sustain their burden in either respect.
Excusable Default
There is no denial of service of the papers upon which this proceeding is based or in the papers supporting the motion to reargue by either of the parties. There is no explanation, excuse or statement that could even remotely be called an excuse from the named respondents, their attorneys in New Jersey who are handling the New Jersey aspects of the case, or counsel in New York (Weekes v Karayianakis, 304 AD2d 561 [2d Dept 2003]; Katsnelson v ELRAC, Inc., 304 AD2d 619 [2d Dept 2003]).
A movant must set forth detailed factual allegations which explain the reason for vacating a default (Grezinsky v Mount Hebron Cemetery, 305 AD2d 542 [2d Dept 2003]). In that regard, and although not raised as a ground for vacatur, the court may consider whether such relief is available pursuant to CPLR 317 (Eugene Di Lorenzo, Inc. v A.C. Dutton Lbr. Co., supra). Even under this statute, however, no relief can be granted.
Service of the original petition herein was made by certified mail upon the respondents, as directed by the order to show *721 cause and as permitted by CPLR 7503 (b). A motion to vacate predicated upon CPLR 317 must be made within one year of receipt of knowledge of the judgment, and the focus is on the manner of service. When a defendant is served by other than personal service, as was the case here, the provisions of this section become applicable (Fleetwood Park Corp. v Jerrick Waterproofing Co., 203 AD2d 238 [2d Dept 1994]). However, a defaulter must also show that it did not receive actual notice of the process in time to defend (Brockington v Brookfield Dev. Corp., 308 AD2d 498 [2d Dept 2003]; Maines Paper & Food Serv. v Farmington Foods, 233 AD2d 595 [3d Dept 1996]), as well as a showing of a meritorious defense. There is no affidavit from the respondents that asserts lack of actual notice.
Although respondents offer as an excuse for their failure to oppose the motion to reargue that their attorney was not served, jurisdiction was properly obtained. CPLR 7503 (c) provides in substance that service of an application to stay arbitration may be served upon the attorney whose name appears on the demand for arbitration or the notice of intention to arbitrate, but this is permissive and not mandatory, and the respondents themselves may still be served. Hence, the failure to serve the attorney, standing alone and in the absence of other factors, should not be regarded as an excuse for vacating a default by the respondents in appearing or in opposing the petition to stay arbitration. Distinguishable is Rodriguez v Allstate Ins. Co. (180 Misc 2d 969 [Civ Ct, Queens County 1999]), which held that where service was improperly made the failure to inform the respondents’ attorneys was sufficient to constitute an excuse for the default in opposing the requested stay. As noted above, service was properly made in the instant case.
Meritorious Defense
To vacate a default under either CPLR 5015 or 317, the movant also must demonstrate the existence of a meritorious defense. This requires an affidavit from a person with knowledge of the facts which contains factual material, and must do more than merely make conclusory allegations or vague assertions (Peacock v Kalikow, 239 AD2d 188 [1st Dept 1997]). While it is not necessary to establish the validity of its defense as a matter of law, it is necessary to demonstrate a defense that is potentially meritorious (Marinoff v Natty Realty Corp., 17 AD3d 412 [2d Dept 2005]; Cupoli v Nationwide Ins. Co., 283 AD2d 961 [4th Dept 2001]). That has not been accomplished here, where the respondents can oppose a stay of uninsured motorist *722 arbitration only by demonstrating that the offending vehicle was uninsured.
The relevant law in this judicial department was stated in Matter of American Mfrs. Mut. Ins. Co. v Morgan (296 AD2d 491 [2d Dept 2002]). After a review of statutes, the Superintendent of Insurance’s Regulation 35-D (11 NYCRR 60-2.0 et seq.) (establishing a definition of “uninsured motor vehicle”) and Court of Appeals decisions, the Second Department concluded that the insolvency of the tortfeasor’s insurer renders that party’s vehicle “uninsured” for purposes of supplementary uninsured/underinsured coverage. The Court did not depart, however, from the rationale of State-Wide Ins. Co. v Curry (43 NY2d 298 [1977]), in which the Court of Appeals had held that a vehicle was not “uninsured” for purposes of triggering the mandatory uninsured motorist coverage that each insurer must include in every policy, because the policyholder had recourse to the same money from the fund administered by MVAIC (see, Insurance Law § 5201 et seq.).
In view of this authority, there is no meritorious defense to the petition presented by the respondents. They essentially rely on one case, Matter of Fireman’s Fund Ins. Co. v Wisham (6 Misc 3d 1017[A], 2005 NY Slip Op 50091[U] [2005]) for the proposition that their insurer is not entitled to a stay of uninsured arbitration. This is based on the assertion that the court had found that because the offending party in Fireman’s Fund had a large ($250,000) deductible insuring its bus and had filed for bankruptcy protection, its bus was “uninsured” for purposes of the uninsured motorist endorsement of the respondents’ policy with the petitioner. Although it is true that here, too, the offending vehicle was a bus, there is a $250,000 self-insured retention/deductible, and the owner is in bankruptcy, a close analysis of the case reveals that it does not support the conclusion urged by respondents, but instead supports the reverse.
In Fireman’s Fund the Supreme Court, New York County (Kornreich, J.) reviewed the statutory definition of “uninsured motor vehicle” and the key statutes and judicial authority, including the cases cited above, and concluded that the bus could be an “uninsured motor vehicle” for purposes of making a claim under the supplementary uninsured/underinsured endorsement (Insurance Law § 3420 [f] [2]), but not for purposes of the mandatory uninsured endorsement (Insurance Law § 3420 [f] [1]).
Under the court’s analysis, the reason that the bus should not be considered “uninsured” for purposes of an uninsured *723 motorist claim was that the injured party could look to MVAIC, up to the same limits found in the mandatory uninsured motorist endorsement. On the other hand, the bus should be considered uninsured for purposes of the supplementary endorsement because MVAIC Act payment limits do not provide a guarantee for such supplemental coverage, which would render this endorsement a nullity, in contravention of legislative purposes. A hearing was ordered to determine, among other things, whether in view of the court’s conclusions of law the facts of that case meant that the bus was an “uninsured motor vehicle.”
The demands for arbitration in the present case, found in two letters to the petitioner dated December 21, 2001 and November 9, 2004, reveal that the claimants were seeking to make an uninsured motorist claim, stated to be a “UM” claim in the letters. Moreover, even if these letters could be read liberally to read the stated “UM” claim to have been made under the “supplementary uninsured/underinsured motorists” endorsement, presented by the respondents as an exhibit, that coverage still appeared to be the minimum required by law, as it was limited to $25,000 for each person injured, up to a maximum of $50,000 for each accident, and thus did not exceed MVAIC Act limits (Insurance Law § 3420 [f| [1]; § 5210 [a] [1]).
It was because the claimants in Fireman’s Fund had supplementary uninsured/underinsured coverage in excess of the MVAIC Act limits that the court found that it might be possible to declare the bus uninsured for purposes of making a claim under that endorsement. No showing of such excess coverage is made here. Accordingly, the respondents’ reliance on this case is misplaced.
The court notes that neither party has raised the fact that the accident took place in New Jersey, whereas the accident underlying the proceeding in Fireman’s Fund took place in New York. However, it appears that this would not change the result here under an analysis which rests on the availability of a claim to a government fund that guarantees compensation up to the limits of the mandatory uninsured motorist endorsement. The court is unaware of any statutory or decisional authority barring a New York resident, who otherwise meets the definition of a “qualified person” under the Motor Vehicle Accident Indemnification Corporation Act (Insurance Law § 5202 [b]), from making an MVAIC Act claim in New York solely because the accident occurred in another state, any more than such a claimant *724 would be barred from making an uninsured motorist claim against a private insurer (cf., Matter of Federal Ins. Co. v Watnick, 80 NY2d 539, 545 [1992] [Court refers to definitions of “insured motor vehicle” and “uninsured motor vehicle” as found in Insurance Law § 5202 (c) and (d), as well as to Vehicle and Traffic Law § 311, in deciding coverage issue where claimants were injured in the Province of Quebec];* New Amsterdam Cas. Co. v Stecker, 3 NY2d 1, 4-5 [1957] [law under which insurance contract was entered into, not site of accident, determines rights of parties to insurance coverage dispute]).
Finally, even if one were to assume that no MVAIC Act claim can be made because the accident occurred in New Jersey, inquiry should be made as to whether the respondents could have pursued a claim under New Jersey’s Unsatisfied Claim and Judgment Fund Law (NJ Stat Ann § 39:6-61 et seq.), which is equivalent to New York’s MVAIC Act statutory scheme. The New Jersey law provides coverage to those injured in New Jersey by uninsured owners, where such injured parties do not have their own uninsured motorist insurance (see, Jimenez v Baglieri, 152 NJ 337, 704 A2d 1285 [1998]). If respondents herein could make such a claim they would be disabled from making an uninsured motorist claim against the petitioner under Matter of Federal Ins. Co. v Watnick (supra).
In view of the foregoing, the respondents have failed to make a showing of a meritorious defense to the petition to stay arbitration and hence the motion to vacate is denied.

 In that case the Court of Appeals held that the New York residents could not make an uninsured motorist claim against their New York insurer, because Quebec itself provided coverage for every vehicle used on public highways in that province, and the offending vehicle was therefore not “uninsured.”