In the Matter of EAGLE INSURANCE COMPANY, Appellant, v NEVILLE HAMILTON, Respondent. JEAN R. LAZARD et al., Proposed Additional Respondents. [773 NYS2d 68]—

In a proceeding pursuant to CPLR article 75 to permanently stay arbitration of a claim for uninsured motorist benefits, the petitioner appeals from an order of the Supreme Court, Kings County (Schneier, J.), dated October 17, 2002, which denied the petition and dismissed the proceeding.

Ordered that the order is reversed, on the law, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent herewith; and it is further,

Ordered that the petitioner shall serve a supplemental notice of petition (*see* CPLR 305 [a]) and amended petition (*see* CPLR 3025 [b]) upon the Superintendent of the New York State Insurance Department, joining him as an additional respondent to the proceeding within 30 days of service upon him of a copy of this decision and order.

In July 1998 the respondent, Neville Hamilton, allegedly was injured in a motor vehicle accident involving the proposed additional respondent Jean R. Lazard. At the time, Hamilton was insured by the petitioner, Eagle Insurance Company (hereinafter Eagle). Hamilton's policy with Eagle provided compulsory uninsured motorist coverage (hereinafter UM coverage) (*see* Insurance Law § 3420 [f] [1]). However, Hamilton did not purchase supplemental uninsured motorist coverage (hereinafter SUM coverage) from Eagle (*see* Insurance Law § 3420 [f] [2]; 11 NYCRR subpart 60-2). Lazard was insured by the proposed additional respondent Reliance National Indemnity Company (hereinafter Reliance), a Pennsylvania company authorized to

sell insurance in New York. After commencing an action against Lazard, Hamilton learned that Lazard's insurer, Reliance, had been declared insolvent and that its New York assets were in receivership and being liquidated by the Superintendent of the New York State Insurance Department (hereinafter the Superintendent) pursuant to Insurance Law article 74. Accordingly, Hamilton sent a letter to Reliance via the Superintendent requesting that it appear in the action on behalf of Lazard. In response, Hamilton was sent a copy of a letter sent to Lazard by the Superintendent stating that, although Hamilton's claim against Lazard was "covered by the New York Public Motor Vehicle Liability Security Fund [hereinafter the PMV Fund] . . . [a]t this time, the PMV Fund is unable to provide either a defense to or indemnification of this claim insofar as the PMV Fund is financially strained." Thereafter, Hamilton made a demand upon his own insurance company, Eagle, for arbitration of a claim for uninsured motorist benefits pursuant to his policy with Eagle.

Eagle commenced this proceeding for a permanent stay of arbitration, arguing that the record revealed that Lazard's vehicle was not uninsured at the time of the accident, but rather, was insured by Reliance. In opposition, Hamilton argued that Reliance's insolvency triggered UM benefits, relying on Insurance Law § 3420 (f) (2) and Regulation 35-D, specifically 11 NYCRR 60-2.3 (f). In reply, Eagle argued that Insurance Law § 3420 (f) (2) and Regulation 35-D were not applicable, as they applied to SUM coverage only, which Hamilton did not purchase. Rather, Eagle asserted, the UM coverage provided to Hamilton was governed by Insurance Law § 3420 (f) (1), which was triggered, inter alia, when "the insurer disclaims liability or denies coverage." Here, Eagle argued, Reliance neither disclaimed liability nor denied coverage, but rather was insolvent, which did not trigger UM coverage. The Supreme Court, finding that the Lazard vehicle qualified as an uninsured vehicle for purposes of Insurance Law § 3420 (f) (1), denied a stay of arbitration. We reverse and remit the matter for further proceedings.

The issues raised on this appeal implicate the interplay among various statutes, regulations, and case law related to UM coverage. Insurance Law § 3420 (f) (1) mandates that all policies issued or delivered in this state insuring against loss for bodily injury or death arising from a motor vehicle accident must contain a provision providing for UM coverage. Such compulsory UM coverage is triggered, inter alia, where an insured is entitled to recover damages from an insured motor vehicle but "the insurer disclaims liability or denies coverage." Insurance Law

§ 3420 (f) (2) requires an insurer to provide, at the option of the insured, the right to purchase supplementary SUM coverage. The regulations promulgated by the Superintendent concerning SUM coverage, generally referred to as Regulation 35-D, provide that such coverage is triggered, inter alia, by the "insolvency" of the alleged tortfeasor's insurer (*see* 11 NYCRR 60.23 [f] [I] [c] [3] [iii]). Since 1958, the Legislature has also provided for a fund, currently known as the PMV fund, pursuant to article 76 of the Insurance Law. The PMV fund provides coverage for, inter alia, allowed claims of injured parties that remain unpaid, in whole or in part, due to the insolvency of an insurer (*see* Insurance Law § 7604). A claim to the fund is made with the Superintendent pursuant to article 74 of the Insurance Law (*see* Insurance Law art 74; *see also* Insurance Law §§ 7607, 7608).

In 1977, before the promulgation of Regulation 35-D (which concerns SUM coverage), the Court of Appeals decided *State-Wide Ins. Co. v Curry* (43 NY2d 298 [1977]). In *State-Wide,* the appellant Virginia Curry was injured in a motor vehicle accident. After the accident, the insurer of the alleged tortfeasor's vehicle was declared insolvent and placed in liquidation. Curry proceeded against her own insurer, State-Wide Insurance Co. (hereinafter State-Wide), seeking UM coverage. State-Wide argued that Curry's remedy was against the PMV fund. Curry argued that the insolvency of the tortfeasor's insurer provided her with option of pursuing either the PMV fund or State-Wide. The Court of Appeals held that, on the facts presented, the insolvency of the alleged tortfeasor's insurer did not provide Curry with such an option. Rather, the Court held, the statutory coverage mandated by then Insurance Law § 167 (2-a) (currently Insurance Law § 3420 [f] [1]—i.e., UM coverage) "presupposes that no other liability coverage exists to compensate innocent victims of motor vehicle accidents" (*id.* at 302). In the case before it, the Court noted, there was such other coverage, i.e., the PMV fund. Thus, the Court held, "there [was] no need to protect such injured person under the Indemnification Endorsement [UM coverage], since compensation is otherwise available" (*id.* at 302; *see also Matter of Union Indem. Ins. Co. of N.Y.,* 92 NY2d 107, 113 [1998]). Furthermore, the *State-Wide* Court noted, the language of then-subdivision 2-a of Insurance Law § 167 (currently Insurance Law § 3420 [f] [1]) was triggered "where the insurer disclaims liability or denies coverage" (*State-Wide Ins. v Curry, supra* at 303). The Court held that the insolvent insurer fit "neither of these categories" (*id.* at 303). Rather, while that insurer had become insolvent after the accident, "the insurance policy itself survived, and the obligations owed its insured were assumed by the [PMV fund]" (*id.* at 303).

Thus, the Court concluded, the alleged tortfeasor's vehicle "was neither 'an uninsured motor vehicle' nor 'an insured vehicle where the insurer disclaim[ed] liability or denie[d] coverage' within the meaning of subdivision 2-a of section 167 of the Insurance Law (currently Insurance Law § 3420 [f] [1])" (*id.* at 303).

The Court of Appeals found its conclusion bolstered by the legislative history of Insurance Law § 167, the purpose of which was to " 'close the gaps . . . with respect to assuring payment of compensation to innocent victims of motor vehicle accidents' " (*id.* at 303, quoting NY Legis Ann, 1958, at 299). The Court held that "surely the Legislature did not intend to provide another remedy for those insured by insolvent domestic insurers, where, due to [the PMV fund], no gap had existed as to assuring compensation to such victims for many years" (*id.* at 303). Finally, the *State-Wide* Court noted, the Appellate Divisions, First and Third Departments, when confronted with similar issues, had arrived at a different interpretation of Insurance Law § 167. In *Matter of Taub (Motor Veh. Acc. Indem. Corp.)* (31 AD2d 378, 382 [1969]), the Appellate Division, First Department, held that the insolvency of the alleged tortfeasor's insurer after the underlying accident "was tantamount to a disclaimer of liability, or denial of coverage." In *Matter of Travis (General Acc. Group)* (31 AD2d 20 [1968]), the Appellate Division, Third Department, reached a "like result" when the alleged tortfeasor's insurer was declared insolvent prior to the accident. The *State-Wide* Court held that while both cases "expressed an overly broad interpretation of subdivision 2-a of section 167," both were correctly decided on their facts because in each case the alleged tortfeasor's insurer had not been licensed to do business in New York and, therefore, had not contributed to the PMV fund (*State-Wide Ins. v Curry, supra* at 304). Thus, payment from the PMV fund was not available.

The distinction to be drawn between UM coverage and SUM coverage, in light of the language of the various statutes and regulations, and implied by the decision in *State-Wide,* was made manifest in a decision of this Court after the enactment of Regulation 35-D, dealing with SUM coverage. In *American Mfrs. Mut. Ins. Co. v Morgan* (296 AD2d 491 [2002]), the alleged tortfeasor's insurer had been declared insolvent after an underlying motor vehicle accident and was in liquidation. The insured, Karen Morgan, who had purchased SUM coverage from her own insurer, the petitioner American Manufacturers Mutual Insurance Company (hereinafter American Manufacturers), filed a claim for such coverage and demanded arbitration. American

Manufacturers sought a permanent stay, arguing that because the alleged tortfeasor's insurer had paid into the PMV fund, Morgan's recourse was against the fund. This Court held that, given the express language of Regulation 35-D (which expressly references insolvency), and the "greater breadth of SUM coverage," Morgan was entitled to seek SUM coverage from American Manufacturers based on the insolvency of the alleged tortfeasor's insurer, and need not pursue the PMV fund (*American Mfrs. Mut. Ins. Co. v Morgan, supra* at 494; *see Matter of Eagle Ins. Co. v St. Julian,* 297 AD2d 737 [2002]).

In sum, where, as here, an injured policy holder is entitled to UM coverage but not SUM coverage from his or her own insurer, and the alleged tortfeasor's insurer has paid into the PMV fund but has been declared insolvent after the underlying accident, the injured policy holder's recourse is not against his or her own insurer for UM coverage, but against the PMV fund via the Superintendent pursuant to Insurance Law article 74 (*see State-Wide Ins. Co. v Curry, supra; Eagle Ins. Co. v St. Julian, supra; Matter of American Mfrs. Mut. Ins. Co. v Morgan, supra*). Accordingly, we remit the matter to the Supreme Court, Kings County, so that the Superintendent may be added as an additional respondent and recourse sought against the PMV fund. Given this threshold issue, we need not determine any further issues at this time. Ritter, J.P., Florio, S. Miller and Luciano, JJ., concur.