James H. Glavin, Jr., J.
The claimant, a Connecticut insurance corporation, duly licensed to transact insurance business in the State of New York, seeks refund of alleged excesses of contributions charged by and paid to the Department of Insurance as contributions for the Motor Vehicle Liability Security Fund created by section 333 of the Insurance Law.
The State has moved to dismiss the claims on the ground that this court lacks jurisdiction, that the claims were not filed within the appropriate time periods, and that the claims fail to state a cause of action. These assertions are contested by the claimant.
The claimant has cross-moved for summary judgment pursuant to CPLR 3212. Answering the motion for summary judgment by claimant, the State reasserts that this court lacks jurisdiction and that the claims fail to state a cause of action. Additionally, the State objects to a granting of summary judgment by this court.
Section 333 of the Insurance Law creates the Motor Vehicle Liability Security Fund. That Fund is a security device created by statute to cover situations arising ‘ ‘ by reason of the insolvency or inability ’ ’ of casualty insurance companies to meet liability obligations.
Into that Fund an insurer, such as claimant, is obliged to periodically pay certain sums computed from “ the amount of net direct written premiums ” charged during the periods involved. The statute defines “ net direct written premiums ” as meaning ‘ ‘ direct gross premiums written on policies, insuring *567 against legal liability arising out of the ownership, operation or maintenance of motor vehicles which are principally garaged in this state, less return premiums thereon and dividends paid to policyholders on such direct business.” The Commissioner of Taxation and Finance is specified by statute to be the “ custodian ” of the Fund and, as such, to invest and disburse the ¡moneys of the Fund.
The Superintendent of Insurance is authorized by statute to adopt, amend and enforce such reasonable rules and regulations as are necessary for the administration of the Fund. The Superintendent is specifically empowered by statute to prescribe and furnish a form upon which insurers are to report the amount of “net direct written premiums” charged by them during each applicable period.
The subject claims arise from the fact claimant excluded from its returns and from its payments into the Fund those premiums received by it for so-called uninsured motorist coverage. (That coverage was required to be added to all New York automobile liability insurance policies by subdivision 2-a of section 167 of the Insurance Law, which was enacted in 1958.) The Superintendent of Insurance took the position such premiums should not be excluded from the calculations of claimant. Claimant thereupon on several occasions paid the disputed amounts to the Superintendent, carefully noting in each instance that such payment was made under protest. Typical language of protest uttered by the claimant is ‘ ‘ Payment of this additional contribution is made under protest and without admission of liability therefor, and for the purpose of avoiding interest, penalties or other proceedings against this Company, and The Travelers Indemnity Company reserves all its rights to take any and all proceedings as to which it may be advised to obtain refund of the same.”
All contentions and arguments of the parties on the respective motions revolve around questions of law. There is no dispute on any issue of fact.
The State’s motion to dismiss is three-pronged, viz: (1) a lack of jurisdiction of this court, (2) failure to make timely filing of the claims, and (3) failure of the claims to state a cause of action.
The State’s motion to dismiss is in all respects, denied.
It is the court’s opinion the claims state causes of action and were filed in timely fashion.
The sole question posed in this case is one of law. Succinctly put, it is whether the payments required to be made by claimant *568 are to be calculated on a basis which includes premiums attributable to uninsured motorist coverage.
The State challenges the jurisdiction of this court, arguing that claimant’s relief, if any, should come under the provisions of CPLR article 78.
In rejecting the State’s contention in this regard, the court takes the position asserted by former Court of Appeals Judge Marvin- Dye, sitting as a Judge of this court in 1966, in the case of China City Corp. v. State of New York (51 Misc 2d 429, 432): “ The jurisdictional challenge made by the State is without ■merit. The issue posed falls squarely within the competence of the Court of Claims to deal with as a matter of law. The court is not called upon to resort to equitable principles and could not do so even if it were, for as we know, the Court of Claims is without equitable jurisdiction. (Court of Claims Act, §§ 8, 9.) ”
In the China City Corp. case, Judge Dye noted (p. 430) “ The sole question posed is one of law.” In that case the question of law was how a fee required to be paid to the State Liquor Authority should be calculated. There, as here, suit in this court was instituted to recover moneys paid to a State agency as the result of allegedly wrongful calculations by the agency of the sum payable. There, as here, statutory intent, an issue of law, was pivotal. ' (See, also, Valenza v. State of New York, 14 Misc 2d 128; Muter v. State of New York, 178 Misc. 360; Samuel Adler, Inc. v. Noyes, 285 N. Y. 34.)
Having concluded the State’s motion to dismiss is without merit, we turn to claimant’s motion for summary judgment.
The. State has asserted ‘ ‘ its objection to summary judgment in the Court of Claims ”, but has candidly qualified that assertion by conceding ‘ ‘ this question has been resolved against the'State in the Appellate Division, Third Department ”. (The State notes it asserts this objection in this case so that it may “reserve the question” in the event this claim reaches the Court of Appeals.) The authority referred to by the State is dispositive of its objection in this court. Summary judgment relief is available in this court. (Vern Norton, Inc. v. State of New York, 27 A D 2d 13; see Court of Claims Act, § 9, subd. 9; CPLR 101.)
There being no dispute on any issue of fact, the motion to dismiss having been found inappropriate, the motion for summary judgment having been made upon the specified underlying papers (see CPLR 3212, and it being clear this court has the *569 power to consider such a motion, we come to the question of law which must be determinative of claimant’s motion for summary judgment.
Claimant’s position is that the definition of “ net direct written premiums ” under section 333 does not require, for calculation purposes, inclusion of premiums attributable to uninsured motorist coverage. It points out that the statutory definition of “net direct written premiums” refers to gross premiums written on policies ‘ ‘ insuring against legal liability arising out of the ownership, operation or maintenance of motor vehicles which are principally garaged in this state The emphasis on the words “ insuring against legal liability ” has been made by claimant and claimant asserts this means insurance of the policyholder against his own legal liability, .and not, as the uninsured motorist clause provides, insurance to which the insured or policyholder shall be entitled to recover as damages from the operator of an uninsured motor vehicle. (See Insurance Law, § 167, subd. 2-a.)
Claimant further contends that in combination with those specified words, “ against legal liability ” the statutory words ‘ ‘ arising out of the ownership, operation or maintenance of motor vehicles which are principally garaged in this state ’ ’, ■there is clear the intent the words “ against legal liability ” refer to the New York insured’s own liability, since the liability ■of the uninsured motorist frequently is that arising out of ownership, operation or maintenance of a motor vehicle which ;comes from and is principally garaged in another State or, as provided by statute, an “unidentified motor vehicle which leaves the scene of an accident” (Insurance law, § 167, subd. 2-a).
The State, responding to claimant’s argument, submits that the “ net direct written premiums ” are all premiums on policies which insure against the potential legal liability of the insured, •it noting the statutory definition refers to “gross premiums written on policies, insuring against legal liability ’ ’. The •State contends that interpretation of the statute as claimant ■urges is asking the court to rewrite the statutory definition to exclude the words “ gross ” and “ policies ”.
To this argument of the State, claimant responds that the State itself, through its Superintendent of Insurance, has excluded certain amounts of premiums attributable to policies insuring against legal liability. It points out that standard policy forms contain certain nonliability coverages customarily included in normal automobile liability insurance policies, with separate *570 boxes provided in the declarations of the premiums for each as, for example, the so-called “medical payments” coverage which is paid ‘ ‘ irrespective of legal liability of the insured ’ ’ (Insurance Law, § 46, subd. 13; subd. 19, par. [b]). Claimant notes that the premiums for such coverage are expressly excluded and deducted on the Fund return form devised and issued by the' Superintendent of Insurance. It asserts they are so excluded for the reason they do not provide coverage “ against legal liability ” of the insured, rather providing for payment irrespective of liability. Claimant further notes, in its argument and brief to the court, that other nonliability coverages having premiums customarily written on policies insuring against liability include collision coverage, which would cover the insured for collision damage even if caused by himself, and comprehensive fire and theft coverage. If the State’s argument were valid, claimant contends, it would mean that such premiums should be included in the calculation for Fund payments, which it asserts they are not.
It is noted that the State, apparently recognizing that by its own acts, it has excluded certain parts of premiums (e.g., medical payments) paid on policies insuring against legal liability, argues that contributions to the Fund should be based on premiums for all mandatory parts of liability policies which include the uninsured motorist coverage.
The so-called return and computation forms promulgated by the Superintendent of Insurance, are appended to the claims •in this case. Clearly they provide, and thus the Superintendent of Insurance has excluded from “ net direct written premiums ” a portion of the total premiums on liability policies which are attributable to nonliability coverage.
The definition of “net direct written premiums” with its coverage of “ gross premiums written on policies, insuring against legal liability arising out of the ownership, operation or maintenance of motor vehicles ” could be interpreted, as claimant contends, as intending to include only premiums derived from actual insurance against legal liability; or, as the State contends, interpretation could be had that all premiums, regardless of the type of insurance coverage provided, which come from a policy which, among other things, insures against legal liability, are included.
The court has given careful consideration to the fact the Superintendent of Insurance has heretofore seen fit, in interpreting and applying section 333, to exclude parts of total policy premiums which do not buy insurance against legal lia *571 bility of the insured, e.g., medical payments coverage. The section authorizes the Superintendent of Insurance to promulgate a form to compute payments due under the section. He has done so and it reflects the exclusion noted. Similarly the court has considered the State’s statement of position that calculations for payments to the Fund “ must be based on the premiums for all mandatory parts of each liability policy ’ ’. That position of the State is consistent with the contention of the claimant, at least to the extent each believes “ parts ” of the total policy premiums are all that are to serve as the basis for Fund payments. The State, of course, claims the parts are to be the “ mandatory parts ” and the claimant urges the parts are to be those insuring against legal liability of the insured.
Careful scrutiny of section 333 gives no indicia whatever that 11 mandatory ’ ’ coverage is to be a criteria of the portion of premiums upon which calculation is to be based. If a portion of the premiums is to be a calculation base, the only logical portion, in the opinion of the court, is that tied to coverage against legal liability. Indeed, if we were to follow the State’s ¡position on what parts were to be included, we would arrive ¡at a query of whether premium amounts attributable to liability coverage in excess of mandatory mínimums had to be included.
The court has carefully studied the statute. It has considered the section antedates the uninsured motorist coverage provisions here relevant. Section 333 could be more explicit. The section’s grammar and punctuation could have been more precise, but the court is aware of the adage that legislators are not presumed to be good grammarians (see McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 251), and realizes punctuation must not interfere with a reasonable statutory construction (see 56 N. Y. Jur., Statutes, § 133). It is aware, too, of the maxim that the letter of a statute is to be restrained by the spirit (see 56 N. Y. Jur., Statutes, § 168).
The court has concluded section 333 was intended to and did create the “ Motor Vehicle Liability 'Security Fund ” as a fund to protect policyholders, who had purchased insurance to guard against situations where they were held liable to others as the result of motor vehicle accidents for damages, from the predicament of coming to a day when they were held liable to another for damages and had the unhappy experience of discovering their insurance company was financially unable to give the protection purchased by them in good faith. Con *572 sistent with this conclusion, the court determines the premium amounts to be included as a base for Fund contribution purposes to be those parts of the total premium representing premium payments for insurance coverage against the liability of the policyholder or insured.
Accordingly, the court concludes the claimant’s motion for summary judgment should be granted.