■ In the Matter of AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Appellant, v KAREN MORGAN, Respondent. [746 NYS2d 726] —In a proceeding, inter alia, pursuant to CPLR article 75 to permanently stay arbitration of a claim for uninsured motorist benefits, the petitioner appeals, as limited by its brief, from so much of an order of the Supreme Court, Nassau County (McCarty, J.), entered December 14, 2001, as, upon renewal, denied the petition and dismissed the proceeding.

Ordered that the order is affirmed insofar as appealed from, with costs.

The respondent Karen Morgan allegedly was injured in a motor vehicle accident on May 12, 2000, in Nassau County. At the time of the accident, Morgan's motor vehicle was insured by the petitioner, American Manufacturers Mutual Insurance Company (hereinafter American Manufacturers). Morgan had also purchased Supplementary Uninsured/Underinsured Motorists coverage (hereinafter SUM). The offending vehicle was insured at the time of the accident by American Agents Insurance Company (hereinafter American Agents). On February 5, 2001, American Agents was placed in liquidation. On May 25, 2001, Morgan filed a demand for SUM arbitration, claiming that the offending vehicle was uninsured.

American Manufacturers filed a petition, inter alia, to permanently stay arbitration under its SUM coverage on the ground that American Agents was a domestic insurer required to pay into the Public Motor Vehicle Liability Security Fund (hereinafter the Security Fund) pursuant to Insurance Law § 7604. American Manufacturers argued that since Morgan could seek compensation from the Security Fund, the offending vehicle was not uninsured, and Morgan's resort to the SUM arbitration clause of her insurance policy was precluded. Morgan countered that the applicable SUM endorsement to her policy contained the same definition of uninsured motor vehicle as Regulation 35-D (11 NYCRR 60-2.3), i.e., where the insurer "is or becomes insolvent." Thus, Morgan argued that, whether by dint of Regulation or American Manufacturers' own contractual agreement, the offending vehicle fell squarely within the definition of an "uninsured motor vehicle" and the petition to stay uninsured motorist arbitration should be denied. The Supreme Court denied the petition and we affirm, but for different reasons than those stated by the Supreme Court. The Supreme Court's holding, based in part on the "clear and unambiguous language" definition of an uninsured motor vehicle as contained in Morgan's SUM endorsement, though correct, too narrowly determines the issue presented.

The sole controversy presented in the action at bar concerns the definition of "uninsured motor vehicle" as used in Regulation 35-D (11 NYCRR 60-2.3), entitled "Requirements for SUM endorsements."

Regulation 35-D was promulgated by the Superintendent of Insurance, effective as of October 1, 1993, under the authority of Insurance Law §§ 201, 301, and 3420 (f) (1) and (2) (see 11 NYCRR 60-2.0 et seq.; NY Reg, June 30, 1993, at 16-17). The regulation defines an uninsured motor vehicle, insofar as is relevant here, as "a motor vehicle * * * for which * * * (3) there is a bodily injury liability insurance coverage or bond application * * * at the time of the accident, but * * * (iii) the insurer writing such insurance coverage or bond * * * is or becomes insolvent" (11 NYCRR 60-2.3 [c] [3] [iii]).

Contrary to the arguments of American Manufacturers, the determination in this proceeding is not governed by the Court of Appeals' holding in State-Wide Ins. Co. v Curry (43 NY2d 298), a case decided prior to the enactment of Regulation 35-D. There, the Court held that the subsequent insolvency of a domestic insurer of an offending vehicle does not render that vehicle uninsured within the meaning of the New York Automobile Accident Indemnification Endorsement, the compulsory

uninsured motorist endorsement (*see State-Wide Ins. Co. v Curry, supra* at 301-304). The basis for the holding is what distinguishes it from the proceeding at bar: (1) the offending vehicle did not fall within the definition of an uninsured motor vehicle as defined in the compulsory uninsured motorist scheme, that is, "where the insurer disclaims liability or denies coverage" (*see* Insurance Law former § 167 [2-a] [now § 3420 (f) (1)]), and (2) Insurance Law former §§ 333 and 334 (now § 7601 *et seq.*), established the Motor Vehicle Liability Security Fund to provide protection for accident victims where the liability insurer is insolvent (*see State-Wide Ins. Co. v Curry, supra* at 301-303). Since an offending vehicle whose insurer becomes insolvent could not be classified as uninsured under the definition set forth in the relevant statute, and the injured motorist could look for compensation to the security fund, the protection afforded by the compulsory uninsured motorist scheme was held to be inapplicable (*id.* at 301-304). The Court's holding in *Curry* was expressly limited to the insolvency of domestic insurers since nondomestic insurers do not contribute to the Motor Vehicle Liability Security Fund (*id.* at 302-303).

The Supreme Court, Nassau County, applied the holding of *Curry* to the only reported post-Regulation 35-D case, *Matter of Government Empls. Ins. Co. v Silber* (178 Misc 2d 451), which is factually identical to the proceeding at bar. The error in the holding in *Matter of Government Empls. Ins. Co. v Silber* (*supra*), is that it interpreted Regulation 35-D, and, in particular, the definition of an "uninsured motor vehicle," so that it was consistent with the Court of Appeals' interpretation of an uninsured motor vehicle as set forth in the compulsory uninsured motorist scheme.

Regulation 35-D is intentionally broader than the compulsory uninsured motorist statute and its very purpose is to provide those who exercise the option to purchase this additional insurance with broader coverage. In response to public comment to Regulation 35-D regarding any conflict with the holding in *State-Wide Ins. Co. v Curry* (*supra*), the Superintendent of Insurance responded, in pertinent part: "While the Court's rationale is a reasonable one with respect to the compulsory uninsured motorists coverage, supplementary uninsured motorists coverage is an optional additional coverage. The individual insured for supplementary uninsured motorists coverage should not be required to wait for a recovery from the Security Fund on behalf of the insolvent insurer. Since the SUM insurer has a subrogation right against the insolvent insurer, the Security Fund would still remain liable, but the insured would be

provided a more prompt recovery from his or her own insurer." (NY Reg, July 8, 1992, at 10.)

The greater breadth of SUM coverage was recognized by the Court of Appeals in *Matter of Government Empls. Ins. Co. v Reichel* (66 NY2d 1000, 1003 [decided after *State-Wide Ins. Co. v Curry, supra*]), where it stated that the "statutory allowance for supplementary uninsured motorists insurance coverage expands the 'uninsured motorist' category." In *Reichel,* the Court found that a financially responsible motorist for purposes of the compulsory provisions of Insurance Law § 3420 (f) (1), may, under certain circumstances, be considered an uninsured motorist for purposes of Insurance Law § 3420 (f) (2).

By a parity of reasoning, under the SUM endorsement's expanded definition of uninsured motor vehicle, one whose insurer becomes insolvent is considered uninsured, even though that very same motorist would not be considered uninsured for purposes of the compulsory uninsured motorist provisions of Insurance Law § 3420 (f) (1). As such, it is not inconsistent with, nor contrary to, the holding in *State-Wide Ins. Co. v Curry (supra)*, to include within the sweep of the SUM coverage the uninsured motorist claim asserted in the proceeding at bar. Florio, J.P., Friedmann, H. Miller and Crane, JJ., concur.