■ In the Matter of EAGLE INSURANCE COMPANY, Appellant, v NEVILLE HAMILTON, Respondent, and JEAN R. LAZARD et al., Proposed Additional Respondents. [791 NYS2d 605]—

Motion by the Superintendent of the New York State Insurance Department for leave to reargue an appeal from an order of the Supreme Court, Kings County, dated October 17, 2002, which was determined by decision and order of this Court dated February 2, 2004, and in effect, for clarification of the decision and order of this Court dated February 2, 2004 [4 AD3d 355].

Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is

Ordered that the branch of the motion which is, in effect, for clarification of the decision and order of this Court dated February 2, 2004, is granted, the motion is otherwise denied, the decision and order of this Court dated February 2, 2004, in the above-entitled case is recalled and vacated, and the following decision and order is substituted therefor:

In a proceeding pursuant to CPLR article 75 to permanently stay arbitration of a claim for uninsured motorist benefits, the petitioner appeals from an order of the Supreme Court, Kings County (Schneier, J.), dated October 17, 2002, which denied the petition and dismissed the proceeding.

Ordered that the order is reversed, on the law, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent herewith; and it is further,

Ordered that the petitioner shall serve a supplemental notice of petition (see CPLR 305 [a]) and amended petition (see CPLR 3025 [b]) upon the Superintendent of the New York State Insurance Department, in his capacity as Administrator of the New York Public Motor Vehicle Liability Security Fund, joining him as an additional respondent to the proceeding within 30 days after service upon him of a copy of this decision and order.

In July 1998 the respondent, Neville Hamilton, allegedly was injured in a motor vehicle accident involving the proposed additional respondent Jean R. Lazard. At the time, Hamilton was insured by the petitioner, Eagle Insurance Company (hereinaf-

ter Eagle). Hamilton's policy with Eagle provided compulsory uninsured motorist coverage (hereinafter UM coverage) (*see* Insurance Law § 3420 [f] [1]). However, Hamilton did not purchase supplemental uninsured motorist coverage (hereinafter SUM coverage) from Eagle (*see* Insurance Law § 3420 [f] [2]; 11 NYCRR 60-2.3). Lazard was insured by the proposed additional respondent Reliance National Indemnity Company (hereinafter Reliance), a Pennsylvania company authorized to sell insurance in New York. After commencing an action against Lazard, Hamilton learned that Lazard's insurer, Reliance, had been declared insolvent, and its New York assets were in receivership and were being liquidated by the Superintendent of the New York State Insurance Department (hereinafter the Superintendent) pursuant to Insurance Law article 74. Accordingly, Hamilton sent a letter to Reliance via the Superintendent requesting that it appear in the action on behalf of Lazard. In response, Hamilton was sent a copy of a letter sent to Lazard by the Superintendent stating that, although Hamilton's claim against Lazard was "covered by the New York Public Motor Vehicle Liability Security Fund [hereinafter the PMV Fund] . . . [a]t this time, the PMV Fund is unable to provide either a defense to or indemnification of this claim insofar as the PMV Fund is financially strained." Thereafter, Hamilton made a demand upon his own insurance company, Eagle, to arbitrate a claim for uninsured motorist benefits pursuant to his policy with Eagle.

Eagle commenced this proceeding for a permanent stay of arbitration, arguing that the record revealed that Lazard's vehicle was not uninsured at the time of the accident, but rather, was insured by Reliance. In opposition, Hamilton argued that Reliance's insolvency triggered UM benefits, relying on Insurance Law § 3420 (f) (2) and Regulation 35-D, specifically 11 NYCRR 60-2.3 (f). In reply, Eagle argued that Insurance Law § 3420 (f) (2) and Regulation 35-D were not applicable, as they applied to SUM coverage only, which Hamilton did not purchase. Rather, Eagle asserted, the UM coverage provided to Hamilton was governed by Insurance Law § 3420 (f) (1), which was triggered, inter alia, when "the insurer disclaims liability or denies coverage." Here, Eagle argued, Reliance neither disclaimed liability nor denied coverage, but rather was insolvent, which did not trigger UM coverage. The Supreme Court, finding that the Lazard vehicle qualified as an uninsured vehicle for purposes of Insurance Law § 3420 (f) (1), denied a stay of arbitration. We reverse and remit the matter for further proceedings.

The issues raised on this appeal implicate the interplay among

various statutes, regulations, and case law related to UM coverage. Insurance Law § 3420 (f) (1) mandates that all policies issued or delivered in this state insuring against loss for bodily injury or death arising from a motor vehicle accident must contain a provision providing for UM coverage. Such compulsory UM coverage is triggered, inter alia, where an insured is entitled to recover damages from an insured motor vehicle but "the insurer disclaims liability or denies coverage." Insurance Law § 3420 (f) (2) requires an insurer to provide, at the option of the insured, the right to purchase supplementary SUM coverage. The regulations promulgated by the Superintendent concerning SUM coverage, generally referred to as Regulation 35-D, provide that such coverage is triggered, inter alia, by the "insolvency" of the alleged tortfeasor's insurer (see 11 NYCRR 60.23 [f] [c] [3] [iii]). Since 1958 the Legislature has also provided for a fund, currently known as the PMV Fund, pursuant to article 76 of the Insurance Law. The PMV Fund provides coverage for, inter alia, allowed claims of injured parties that remain unpaid, in whole or in part, due to the insolvency of an insurer (see Insurance Law § 7604). A claim to the fund is made with the Superintendent pursuant to article 74 of the Insurance Law (see Insurance Law art 74; see also Insurance Law §§ 7607, 7608).

In 1977, before the promulgation of Regulation 35-D (which concerns SUM coverage), the Court of Appeals decided State-Wide Ins. Co. v Curry (43 NY2d 298 [1977]). In State-Wide, the appellant Virginia Curry was injured in a motor vehicle accident. After the accident, the insurer of the alleged tortfeasor's vehicle was declared insolvent and placed in liquidation. Curry proceeded against her own insurer, State-Wide Insurance Co. (hereinafter State-Wide), seeking UM coverage. State-Wide argued that Curry's remedy was against the PMV Fund. Curry argued that the insolvency of the tortfeasor's insurer provided her with option of pursuing either the PMV Fund or State-Wide. The Court of Appeals held that, on the facts presented, the insolvency of the alleged tortfeasor's insurer did not provide Curry with such an option. Rather, the Court held, the statutory coverage mandated by then Insurance Law § 167 (2-a) (currently Insurance Law § 3420 [f] [1]—i.e., UM coverage) "presupposes that no other liability coverage exists to compensate innocent victims of motor vehicle accidents" (id. at 302). In the case before it, the Court noted, there was such other coverage, i.e., the PMV Fund. Thus, the Court held, "there [was] no need to protect such injured person under the Indemnification Endorsement [UM coverage], since compensation is otherwise available" (id.; see also Matter of Union Indem. Ins. Co. of N.Y., 92 NY2d 107, 113 [1998]). Furthermore, the State-Wide Court

noted, the language of then-subdivision 2-a of Insurance Law § 167 [currently Insurance Law § 3420 (f) (1)] was triggered "where the insurer disclaims liability or denies coverage" (*State Wide Ins. v Curry, supra* at 303). The Court held that the insolvent insurer fit "neither of these categories" (*id.* at 303). Rather, while that insurer had become insolvent after the accident, "the insurance policy itself survived, and the obligations owed its insured were assumed by the [PMV Fund]" (*id.* at 303). Thus, the Court concluded, the alleged tortfeasor's vehicle "was neither 'an uninsured motor vehicle' nor 'an insured vehicle where the insurer disclaim[ed] liability or denie[d] coverage' within the meaning of subdivision 2-a of section 167 of the Insurance Law [currently Insurance Law § 3420 (f) (1)]" (*id.* at 303).

The Court of Appeals found its conclusion bolstered by the legislative history of Insurance Law § 167, the purpose of which was to " 'close the gaps . . . with respect to assuring payment of compensation to innocent victims of motor vehicle accidents' " (*id. at 303,* quoting NY Legis Ann, 1958, p 299). The Court stated that "surely the Legislature did not intend to provide another remedy for those insured by insolvent domestic insurers, where, due to [the PMV Fund], no gap had existed as to assuring compensation to such victims for many years" (*id.*). Finally, the *State-Wide* Court noted, the Appellate Divisions, First and Third Departments, when confronted with similar issues, had arrived at a different interpretation of Insurance Law § 167. In *Matter of Taub (Motor Veh. Acc. Indem. Corp.)* (31 AD2d 378, 381 [1969]), the Appellate Division, First Department, held that the insolvency of the alleged tortfeasor's insurer after the underlying accident "was tantamount to a disclaimer of liability, or denial of coverage." In *Matter of Travis (General Acc. Group)* (31 AD2d 20 [1968]), the Appellate Division, Third Department, reached a "like result" when the alleged tortfeasor's insurer was declared insolvent before the accident. The *State-Wide* Court held that while both cases "expressed an overly broad interpretation of subdivision 2-a of section 167," both were correctly decided on their facts because in each case the alleged tortfeasor's insurer had not been licensed to do business in New York and, therefore, had not contributed to the PMV Fund (*State Wide Ins. v Curry, supra* at 304). Thus, payment from the PMV Fund was not available.

The distinction to be drawn between UM coverage and SUM coverage, in light of the language of the various statutes and regulations, and implied by the decision in *State-Wide,* was made manifest in a decision of this Court after the enactment of

Regulation 35-D, dealing with SUM coverage. In *American Mfrs. Mut. Ins. Co. v Morgan* (296 AD2d 491 [2002]), the alleged tortfeasor's insurer had been declared insolvent after an underlying motor vehicle accident and was in liquidation. The insured, Karen Morgan, who had purchased SUM coverage from her own insurer, the petitioner American Manufacturers Mutual Insurance Company (hereinafter American Manufacturers), filed a claim for such coverage and demanded arbitration. American Manufacturers sought a permanent stay, arguing that because the alleged tortfeasor's insurer had paid into the PMV Fund, Morgan's recourse was against the fund. This Court held that, given the express language of Regulation 35-D (which expressly references insolvency), and the "greater breadth of SUM coverage," Morgan was entitled to seek SUM coverage from American Manufacturers based on the insolvency of the alleged tortfeasor's insurer, and need not pursue the PMV Fund (*American Mfrs. Mut. Ins. Co. v Morgan, supra* at 494; *see Matter of Eagle Ins. Co. v St. Julian,* 297 AD2d 737 [2002]).

Here, because Hamilton purchased UM coverage only from his insurer (Eagle), and the alleged tortfeasor's now insolvent insurer (Reliance) paid into the PMV Fund, Hamilton's recourse is not against Eagle for UM coverage, but against the PMV Fund (*see State-Wide Ins. Co. v Curry, supra; Eagle Ins. Co. v St. Julian, supra; American Mfrs. Mut. Ins. Co. v Morgan, supra*). However, this is not to say that under no circumstances will Hamilton be entitled to UM coverage from Eagle. Rather, resolution of this issue turns on a question not expressly answered by the analysis, supra, to wit: What is to occur if the Superintendent, as administrator of the PMV Fund, denies Hamilton recovery from the fund. That is, whether this would be a denial of coverage within the meaning of Insurance Law § 3420 (f) (1), thereby triggering Hamilton's right to UM coverage from Eagle. Resolution of this question implicates the statutory scheme concerning the PMV Fund and its place in the highly regulated area of no-fault benefits. Whether this question need be reached turns on the threshold factual issue of whether coverage from the PMV Fund is being denied. The only evidence in the record concerning this issue—the letter from the Superintendent, carbon copied to Hamilton, stating that coverage from the PMV Fund was being denied "at this time" due to "financial strain," is wholly insufficient. Given this threshold factual issue, and the potentially broad significance of resolution of the question of whether the denial of recovery from the PMV Fund is a denial of coverage within the meaning of Insurance Law § 3420 (f) (1), these matters are best determined in the first instance by the Supreme Court, on a more

fully developed record and after joinder of the Superintendent. Ritter, J.P., Florio, S. Miller and Luciano, JJ., concur.