OPINION OF THE COURT
Paul G. Feinman, J.
Petitioner American Transit Insurance seeks an order permanently staying the uninsured motorist arbitration demanded by respondent Ramona Barger. In the alternative, American seeks a temporary stay of arbitration while setting the matter down for a framed issue hearing and an examination before trial or independent medical examination of respondent Ramona Barger. For the reasons which follow, the petition is granted and the arbitration is permanently stayed.
Factual and Procedural Background
The dispute before the court stems from a two-car collision at LaGuardia Airport in Queens County, New York. On June 18, 1999, a vehicle owned by Iqbal Mian Zafar, and operated by Ahmed S. Zafar, collided with a motor vehicle owned by PA Operating Inc. and operated by Morel Vazquez.[1] Respondent Barger was a passenger in the PA Operating Inc. vehicle at the time of the accident. American insured the PA Operating Inc. vehicle.
The Zafar vehicle was at fault, a fact which is not really in dispute in the instant action. Accident records compiled by the Port Authority of New York and New Jersey and the Department of Motor Vehicles show that the Zafar vehicle was insured by Legion Insurance Company at the time of the accident. Legion, a Pennsylvania corporation, was determined to be insolvent by a competent court of jurisdiction in the Commonwealth of Pennsylvania on July 25, 2003. On August 22, 2003, Legion’s New York operations were placed under the control of the New York Liquidation Bureau by an order of the Supreme Court, New York County.
Legion was insolvent by the time respondent Barger commenced her underlying action. On March 16, 2006, respondent Barger initiated a claim against American in the Supreme Court of Queens County, claiming that since Legion Insurance was *388 insolvent, the Zafar vehicle constituted an uninsured motorist.[2] Barger then sought arbitration of her uninsured motorist claim. Barger contends that Legion’s insolvency rendered Zafar an uninsured motorist, enabling her to seek recovery from American. American disputes this contention, claiming that the Zafar vehicle was insured on the date of the accident, and that Zafar does not meet the statutory definition of an uninsured motorist. American also claims that since Zafar was not an uninsured motorist, the arbitration sought by Barger is improper and should be permanently stayed.
The Liquidation Bureau sent out a notice to policyholders, claimants and all other persons interested in the ancillary receivership of Legion. One such document was sent to Iqbal Mian Zafar on January 14, 2004. Respondent includes a copy of this letter in her reply papers, citing it as a reason for initiating uninsured motorist arbitration against American. The document itself explains that while the policyholders of Legion were covered by the New York Public Motor Vehicle Liability Security Fund (the PMV fund) (codified at Insurance Law § 7604), the PMV fund itself was financially strained. The notice further states that the PMV fund is “unable to provide either a defense or indemnification of the claim. Thus, you are responsible for the payment of any settlement, judgment, costs and expenses relating to the claim.” (Liquidation Bureau letter dated Jan. 24, 2004 included in respondent’s papers.) While the tone of the letter suggests that the PMV fund is financially unable to make any payments, it also explains that issues in litigation or on the trial calendar can be submitted to the Liquidation Bureau for settlement from the PMV fund. No evidence has been presented showing that Barger has attempted to recover compensation from the Liquidation Bureau.
Discussion
Respondent Barger has attempted to compel American into arbitration through the uninsured motorist provision of New York law. This provision, established in Insurance Law § 3420 (f) (1), sets out the obligations of insurance providers in New York regarding accidents that involve uninsured motorists. Individuals covered by an insurance policy involved in a motor vehicle accident with an uninsured or underinsured motorist *389 can recover from the insurance carrier that covered them. Insurance Law § 3420 (f) (1) requires that automobile insurers in New York must provide “a provision whereby the insurer agrees that it will pay to the insured . . . damages from an owner or operator of an uninsured motor vehicle.” In order to operate in New York an insurer must provide this uninsured motorist coverage to customers.
Insurance Law § 3240 (f) (1) defines what constitutes an uninsured motorist or vehicle. The statute states that an uninsured motorist or vehicle exists when a motorist is without liability insurance at the time of an accident, a stolen vehicle is involved in an accident, motor vehicles operated without permission of the owner are in an accident, unknown vehicles are involved in a hit and run accident, or where an insurer disclaims liability or denies coverage. (Insurance Law § 3420 [f] [1].) An accident involving any of these scenarios can trigger the uninsured motorist provision.
Courts have found that where there is a motorist carrying insurance at the time of the accident and the insurance provider is later declared insolvent, the protections of the uninsured motorist provision of Insurance Law § 3420 (f) (1) are not triggered. (Mejia v Santos, 10 Misc 3d 831 [Sup Ct, Bronx County 2005].) This determination relies, in large part, upon the existence of a separate statutory mechanism for recovery from an insolvent insurer. The PMV fund was created to protect policyholders from the predicament of being held liable for damages because their insurer was financially unable to provide the protection they purchased. (Travelers Indem. Co. v State of New York, 57 Misc 2d 565 [Ct Cl 1968], affd 33 AD2d 127 [3d Dept 1969], affd 28 NY2d 561 [1971].) The PMV fund is used to allow recovery on claims “remaining unpaid, in whole or in part, by reason of the insurer’s insolvency” (Insurance Law § 7604 [a]). When an insurer becomes insolvent “the insurance policy itself survive[s], and the obligations owed the insured [are] assumed by the [PMV] fund.” (State-Wide Ins. Co. v Curry, 43 NY2d 298, 303 [1977].) The PMV fund was specifically created to deal with the problems that spring from an insolvent insurer, preventing the uninsured motorist provision of Insurance Law § 3420 (f) (1) from being triggered.
Where the insurer operates in New York, and has paid into the PMV fund, “plaintiffs recourse is against the PMV Fund.” (Mejia v Santos, 10 Misc 3d at 836.) Generally an insurer’s insolvency does not trigger the uninsured motorist provision *390 because none of the factors of Insurance Law § 3420 (f) (1) are present. Insolvency does not mean that the insurer is disclaiming liability or denying coverage. The policy itself survives insolvency, as the PMV fund takes on the obligations of the insolvent insurance provider. (State-Wide Ins. Co. v Curry, 43 NY2d at 304.) So long as the insolvent insurer had paid into the PMV fund, subsequent insolvency does not render policyholders uninsured motorists. (Matter of Eagle Ins. Co. v Hamilton, 16 AD3d 498, 502 [2d Dept 2005].) The PMV fund steps into the shoes of the insolvent insurance provider. Accordingly, compensation is properly sought against the PMV fund, not through the uninsured motorist provision of a separate insurance provider.
While it is generally the rule that insolvency does not trigger uninsured motorist protection, there are exceptions to this rule. A handful of cases in New York classify drivers covered by insolvent insurance providers as uninsured. These cases, while seemingly at odds with the above-cited New York cases, rest on a crucial distinction. In Matter of Taub (Motor Veh. Acc. Indem. Corp.) (31 AD2d 378 [1st Dept 1969]) and Matter of Travis (General Acc. Group) (31 AD2d 20 [3d Dept 1968]), the First and Third Departments held that an insolvent insurance company effectively disclaimed liability or denied coverage, which in turn triggered uninsured motorist protection. The Court in StateWide addressed these findings, saying that they were properly decided on their facts because in each instance the insolvent insurance providers were not licenced to operate in New York, and had not paid into the PMV fund. (State-Wide Ins. Co. v Curry, 43 NY2d at 305; see also Eagle Ins. Co. v Hamilton, 16 AD3d at 502.) As the insurance provider did not pay into the PMV fund, the PMV fund could not assume the provider’s responsibility to policyholders. Taub and Travis, when read in the light of State-Wide and Eagle, show that the insolvency of an insurance provider creates an uninsured motorist when the insolvent insurance provider had not paid into the PMV fund, leaving policyholders and claimants without an avenue of recourse. In this narrow set of circumstances, the insolvency of an insurer creates an uninsured motorist for the purposes of Insurance Law § 3420 (f) (1).
In addition to the uninsured motorist coverage required by Insurance Law § 3420 (f) (1), New York law requires that insurers make available the option to purchase supplemental uninsured motorist insurance. Insurance Law § 3420 (f) (2) *391 allows policyholders to purchase additional coverage for an uninsured motorist, above the statutory máximums established in Insurance Law § 3420 (f) (1). Insurance Law § 3420 (f) (2) has been further modified by the promulgation of 11 NYCRR 60-2.3, known as Regulation 35-D. Regulation 35-D expands the definition of an uninsured motorist to include situations where “the insurer writing such insurance coverage or bond . . . is or becomes insolvent.” (11 NYCRR 60-2.3 [f] [I] [c] [3] [iii].) This expansion of what constitutes an uninsured motorist only applies where the claimant purchased supplemental uninsured motorist coverage available through Insurance Law § 3420 (f) (2). (Matter of American Mfrs. Mut. Ins. Co. v Morgan, 296 AD2d 491, 493 [2d Dept 2002].) The Court in Morgan cites the legislative history of Regulation 35-D to support this broader definition, claiming that “[t]he individual insured for supplementary uninsured motorists coverage should not be required to wait for a recovery from the Security [PMV] Fund on behalf of the insolvent insurer.” (Morgan at 493.) The effect of the interplay between Regulation 35-D, Insurance Law § 3420 (f) (1), (2) and Morgan is that for individuals with supplementary uninsured motorists coverage, an individual at fault who is covered by an insolvent insurer is considered an uninsured motorist. The insolvency of an insurer transforms an otherwise insured motorist into an uninsured motorist only when supplemental uninsured motorist coverage has been purchased.
Turning to the case at bar, for American’s petition to succeed it must show that the facts surrounding Ramona Barger’s accident do not involve an uninsured motorist as defined in Insurance Law § 3420 (f) (1). American must further demonstrate that respondent Barger was not covered by supplemental uninsured motorist insurance at the time of the accident. Demonstrating these two factors will effectively bar respondent Barger from seeking relief under the uninsured motorist provision, rendering a stay of arbitration appropriate.
American Transit Insurance was licensed to operate in the State of New York, and as such was required by Insurance Law § 3420 (f) (1) to provide uninsured motorist coverage. While American readily admits its obligations to provide uninsured motorist coverage, it does not accept respondent Barger’s contention that she was the victim of an uninsured motorist. The Zafar vehicle did not fall under any of the uninsured motorist classifications established in Insurance Law § 3420 (f) (1). *392 The vehicle was insured, and registered in the State of New York at the time of the accident. It was not a stolen vehicle or an unidentified vehicle that fled the scene of the accident. It was operated with the permission of the owner and the insurer did not disclaim liability or deny coverage. The insurer, Legion, did not disclaim or deny coverage by reason of its insolvency because it had paid into the PMV fund. There is no evidence to suggest respondent Barger was covered by supplemental uninsured motorist coverage, and therefore cannot claim a right to uninsured motorist coverage under Insurance Law § 3420 (f) (2).
Respondent argues that the insurer disclaimed liability or denied coverage by reason of its insolvency, thereby satisfying Insurance Law § 3420 (f) (1). This argument cannot succeed. It is not, as respondent contends, “well-settled law” that insolvency on the part of the insurer triggers uninsured motorist claims. Rather, insolvency does not trigger uninsured motorist claims, as the policy itself survives its provider’s insolvency. (See, State-Wide Ins. Co. v Curry, 43 NY2d 298 [1977]; Matter of Eagle Ins. Co. v Hamilton, 16 AD3d 498 [2005].) The insolvent insurer does not disclaim liability or deny coverage by reason of insolvency alone, the burden of coverage shifts to the PMV fund. The PMV fund was created to provide those in respondent’s position with compensation for their injuries. (State-Wide, 43 NY2d 298 [1977].)
The availability of compensation from the PMV fund means that the insolvent insurer has not disclaimed liability or denied coverage. Applied to the instant action, this means that the Zafar vehicle cannot be classified as uninsured under Insurance Law § 3420 (f) (1). Barger does not get the choice to pursue compensation from either the PMV fund or American. Such a choice would frustrate the purpose for which the PMV fund was created. Uninsured motorist coverage exists to provide innocent victims some means of recovery where none is available. Here, as in State-Wide and Eagle, the PMV fund is available, therefore it is improper for Barger to seek uninsured motorist protection. As the Court in State-Wide pointed out, holding otherwise would be “manifestly unfair to domestic insurers. Having contributed to the Security Fund [PMV], they are entitled to be sheltered from insurance obligations where the Security Fund provides an adequate remedy.” (State-Wide Ins. Co. v Curry, 43 NY2d at 304.) The Zafar vehicle cannot be classified as an uninsured vehicle, because the PMV fund has assumed Legion’s obligations. Respondent’s remedy is best sought from the PMV fund.
*393 It bears noting that the letters from the PMV fund that respondent Barger produces do not constitute a disclaimer of liability or a denial of coverage. Courts have found that nearly identical letters produced in similar cases do not constitute disclaimers or denials. (See, State-Wide Ins. Co. v Curry; Eagle Ins. Co. v Hamilton; Mejia v Santos, 10 Misc 3d 831 [2005].) The letter, detailing the PMV fund’s financial strain, does not constitute a denial of claim. The letter states in part that if the claim is on the trial calendar, the Liquidation Bureau will attempt to settle the claim. The very text of the letter reveals the availability of compensation from the Liquidation Bureau and the PMV fund. There is no evidence that Barger contacted the Liquidation Bureau in hopes of settling her claim. Since respondent has not pursued the PMV fund for compensation, she cannot claim her coverage was denied. It then follows that as there has not been a disclaimer of liability or denial of coverage, the dictates of Insurance Law § 3420 (f) (1) remain unsatisfied and respondent Barger cannot properly seek uninsured motorist arbitration with American.
Finally, without any evidence that American had provided supplemental uninsured motorist coverage, claims by respondent that the insolvency of the Zafar vehicle’s insurer trigger uninsured motorist protections must fail. The expanded definition of an uninsured motorist, detailed in Morgan, applies only to situations where supplemental uninsured motorist coverage was provided. Barger has produced no evidence showing that she was covered by supplemental uninsured motorist protection in any form. The insolvency of an insurer only triggers uninsured motorist protection where there is supplemental uninsured motorist coverage or in the narrow circumstance where an insurer did not pay into the PMV fund. For the purposes of Insurance Law § 3420 (f) (2) and Regulation 35-D, whether or not Legion paid into the PMV fund or not is irrelevant. Insurance Law § 3420 (f) (2) and Regulation 35-D only come into play where there is supplemental uninsured motorist coverage. Since there is no evidence of supplemental uninsured motorist coverage, respondent cannot avail herself of the expanded definition of an uninsured motorist found in Regulation 35-D. Despite the intentionally broad reach of Regulation 35-D, it cannot be applied in cases where supplemental uninsured motorist coverage was not purchased. Given respondent’s failure to produce evidence that she was covered by supplemental uninsured *394 motorist insurance coverage, she cannot use Regulation 35-D as a vehicle to compel an uninsured motorist arbitration with American.
Accordingly it is ordered and adjudged that the petition is granted and the uninsured motorist arbitration demanded between American Transit Insurance and Ramona Barger regarding the June 18, 1999 accident with Legion Insurance Company’s insured is permanently stayed.

. Ahmed S. Zafar, Iqbal Mian Zafar, PA Operating Inc., and New York Liquidation Bureau are all proposed additional respondents.

. Respondent’s demand for arbitration affidavit of service (exhibit B in petitioner’s papers) is not signed or notarized, but this deficiency is not addressed by petitioner.