# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**454**

**CA 09-00404**

PRESENT: SMITH, J.P., PERADOTTO, CARNI, LINDLEY, AND MARTOCHE, JJ.

---

IN THE MATTER OF THE ARBITRATION BETWEEN
ADAM BOBAK, PETITIONER-RESPONDENT,

AND                                                    MEMORANDUM AND ORDER

AIG CLAIMS SERVICES, INC., NEW HAMPSHIRE
INSURANCE COMPANY AND AMERICAN INTERNATIONAL
GROUP, INC., RESPONDENTS-APPELLANTS.

---

GOLDBERG SEGALLA LLP, BUFFALO (PAUL D. MCCORMICK OF COUNSEL), FOR
RESPONDENTS-APPELLANTS.

THE COSGROVE LAW FIRM, BUFFALO (EDWARD C. COSGROVE OF COUNSEL), FOR
PETITIONER-RESPONDENT.

---------------------------------------------------------------------------------------------------

Appeal from a judgment (denominated order and judgment) of the
Supreme Court, Erie County (Joseph G. Makowski, J.), entered December
22, 2008 in a proceeding pursuant to CPLR article 75.  The appeal was
held by this Court by order entered April 30, 2010, decision was
reserved and the matter was remitted to Supreme Court, Erie County,
for further proceedings (72 AD3d 1651).  The proceedings were held and
completed (Paula L. Feroleto, J.).

It is hereby ORDERED that the judgment so appealed from is
reversed on the law without costs, the petition seeking to confirm the
arbitration award is dismissed and the arbitration award is vacated.

Memorandum:  Respondents appeal from a judgment confirming an
arbitration award.  We previously held this case, reserved decision
and remitted the matter to Supreme Court for a determination, after a
framed-issue hearing, whether the third-party vehicle at issue was
covered by any other insurance that would negate the supplemental
uninsured/underinsured motorist (SUM) coverage afforded by the policy
issued by respondent New Hampshire Insurance Company (NHIC) (*Matter of
Bobak [AIG Claims Servs., Inc.]*, 72 AD3d 1651).  We also reversed the
order in a related appeal that denied NHIC's petition seeking a
permanent stay of arbitration, and we remitted the matter to Supreme
Court for, inter alia, a new determination on that petition (*Matter of
New Hampshire Ins. Co. [Bobak]*, 72 AD3d 1647, 1649-1650).  Upon
remittal in each case, the court conducted the framed-issue hearing
based only on submitted documents and oral arguments.  The court
concluded that NHIC's SUM coverage was not implicated because
Travelers Insurance Company (Travelers) had issued an excess policy
that would provide $1,000,000 of coverage to petitioner.  The court

also, inter alia, granted a temporary stay of arbitration that would become permanent upon payment to petitioner of the benefits afforded by the Travelers policy.

Initially, we note that the order entered by the court upon remittal applies only to the order reversed in *Matter of New Hampshire*, and we further note that no appeal has been taken from that order entered upon remittal. Consequently, the contentions of the parties with respect to the stay of arbitration granted therein are not before us. Nevertheless, we conclude that the evidence presented at the framed-issue hearing and the court's factual findings in that order are applicable to the issue that is before us after remittal in *Matter of Bobak*. Thus, in the interest of judicial economy, we deem the factual findings made by the court in the order entered upon remittal in *Matter of New Hampshire* to be applicable to the appeal from the judgment before us.

We conclude that petitioner's contention that the court erred in failing to join Travelers and the Ohio Insurance Guaranty Association (OIGA) as necessary parties is raised for the first time on appeal and thus is not properly before us (*see Levi v Levi*, 46 AD3d 519, 520; *cf. Matter of Dioguardi v Donohue*, 207 AD2d 922, 922).

We agree with NHIC that the court erred in confirming the arbitration award. In a case such as this "[w]here arbitration is compulsory, our decisional law imposes closer judicial scrutiny of the arbitrator's determination under CPLR 7511 (b) . . . To be upheld, an award in a compulsory arbitration proceeding must have evidentiary support and cannot be arbitrary and capricious" (*Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 214, 223; *see Matter of Mangano v United States Fire Ins. Co.*, 55 AD3d 916, 917). Here, we conclude that there is no evidentiary support for the arbitrator's conclusion that petitioner was entitled to collect SUM benefits from NHIC. The SUM policy provisions state that it affords coverage where, inter alia, a person covered by the policy is involved in an accident with a motor vehicle that is uninsured, which includes a situation in which the other vehicle's insurer disclaims coverage or becomes insolvent. Although the evidence before us establishes that the other vehicle's primary insurer is insolvent and that no benefits will be afforded to petitioner by the OIGA, which assumed the liabilities of that insolvent company, the evidence also establishes that there is an excess policy issued by Travelers, and that Travelers did not disclaim coverage. We therefore reverse the judgment, dismiss the petition seeking to confirm the arbitration award and vacate the arbitration award.

All concur except CARNI, J., who dissents and votes to affirm in the following Memorandum: I concur with the conclusion of my colleagues that the interest of judicial economy is served by deeming the factual findings made by Supreme Court in the order entered upon remittal in *Matter of New Hampshire Ins. Co. (Bobak)* (72 AD3d 1647) to be applicable to this appeal. I further concur with the conclusion of my colleagues that petitioner's contention that the court erred in failing to join Travelers Insurance Company (Travelers) and Ohio

Insurance Guaranty Association as necessary parties is not properly before us.

I disagree, however, with the conclusion of my colleagues that petitioner is not entitled to collect supplementary uninsured/underinsured motorist (SUM) benefits from respondent New Hampshire Insurance Company (NHIC). Inasmuch as I conclude that the court properly confirmed the arbitration award, I respectfully dissent.

Petitioner was seriously injured when a truck that he was driving for his employer was struck by rolls or coils of aluminum that fell off of a truck owned by B-Right Trucking Company (B-Right) and operated by Eugene Hughes, now deceased (Hughes). Hughes and B-Right (collectively, tortfeasors) were insured under a motor vehicle liability policy issued by Reliance Insurance Company (Reliance) insuring the B-Right truck. In addition, B-Right was insured under a "Form Excess Liability Policy," also entitled a "Commercial General Liability" policy, issued by Travelers and having a coverage limit in the amount of $1 million (Travelers excess policy). Petitioner is a covered person under the SUM endorsement issued by NHIC to petitioner's employer, which has a coverage limit in the amount of $1 million (SUM endorsement).

Petitioner and his wife commenced a personal injury action against the tortfeasors, among others, and a jury awarded petitioner personal injury damages against Hughes in the sum of $3,315,000. Petitioner sought arbitration of his SUM claim and the arbitrator concluded that the value of petitioner's injuries exceeded the limits of NHIC's SUM coverage and awarded petitioner the SUM coverage limit of $1 million. Ultimately, this Court directed a framed-issue hearing on the question of "insurance coverage" (*New Hampshire Ins. Co.*, 72 AD3d at 1650).

I agree with the majority that the evidence at the hearing establishes that Reliance is insolvent. Thus, the court properly identified the threshold issue to be whether the B-Right truck was an "uninsured motor vehicle" under the SUM endorsement and the parties have extensively addressed that issue both before the court and on appeal.

Section I (c) (3) (iii) of the SUM endorsement defines an "uninsured motor vehicle" as "a motor vehicle . . . for which . . . [t]here is a bodily injury liability insurance coverage or bond applicable to such motor vehicle at the time of the accident, but . . . . [t]he insurer writing such insurance coverage or bond denies coverage, or . . . becomes insolvent." Inasmuch as there is no dispute that the tortfeasors' insurer, Reliance, is insolvent, there is no question that petitioner's SUM coverage is "triggered" by that section (*see Matter of Metropolitan Prop. & Cas. Ins. Co. v Carpentier*, 7 AD3d 627, 628; *American Mfrs. Mut. Ins. Co. v Morgan*, 296 AD2d 491, 494; *see also* Insurance Department Regulations [11 NYCRR] § 60-2.3 [f] [I] [c] [3] [iii]). NHIC contends that, regardless of Reliance's insolvency, the Travelers excess policy

constitutes a "bodily injury liability insurance coverage or bond applicable" to the tortfeasors that prevents the "triggering" of SUM coverage because the combined Reliance and Travelers policy limits exceed the SUM coverage available to petitioner. In other words, NHIC effectively seeks to combine the coverage limits of the Reliance motor vehicle liability policy with the coverage limits of the Travelers excess policy for purposes of determining whether the B-Right truck was an "uninsured motor vehicle" under the SUM endorsement.

The court concluded and the majority agrees that, notwithstanding Reliance's insolvency, the B-Right truck did not constitute an "uninsured motor vehicle" under the SUM endorsement because B-Right had $1 million in coverage under the Travelers excess policy, and that consequently NHIC's SUM coverage was not implicated. Thus, the majority concludes that there was no evidentiary support for the arbitrator's conclusion that petitioner was entitled to collect SUM benefits from NHIC. I disagree.

Section I (c) (1) of the SUM endorsement also defines an "uninsured motor vehicle" as a vehicle for which "[n]o bodily injury liability insurance policy or bond applies." In my view, the only way the majority can determine that the B-Right truck is not an "uninsured motor vehicle" is to conclude that an excess policy is a "bodily injury liability insurance policy" under the SUM endorsement, the Insurance Law, the Vehicle and Traffic Law and the Insurance Department Regulations. Thus, the issue presented is whether the term "uninsured motor vehicle" includes a vehicle that is covered under a motor vehicle liability policy issued by an insolvent insurance company when the vehicle is also covered under a commercial general liability excess policy.

I conclude that where, as here, a vehicle is insured by a motor vehicle liability policy issued by an insolvent insurance company and is thus an "uninsured motor vehicle," the existence of an excess insurance policy does not change its status as such. In other words, an excess or umbrella policy does not constitute a "bodily injury liability insurance policy" for purposes of determining whether a motor vehicle is "an uninsured motor vehicle" triggering SUM coverage. I further conclude that the amount of a tortfeasor's coverage under a motor vehicle liability policy may not be combined with the amount of his or her coverage under a commercial general liability excess policy in determining whether SUM coverage is implicated.

Those conclusions are supported by an analysis of article 7 of the Vehicle and Traffic Law, entitled the Motor Vehicle Safety Responsibility Act, which requires motor vehicle owners and operators to obtain a specific type of insurance, namely, a "motor vehicle liability policy" (Vehicle and Traffic Law § 330 *et seq*.). Vehicle and Traffic Law § 345 (a) defines a "motor vehicle liability policy" as "an owner's or an operator's policy of liability insurance certified as provided in [section 343] . . . as proof of financial responsibility, and issued . . . by an insurance carrier . . . to or for the benefit of the person named therein as insured." Vehicle and Traffic Law § 343 provides that "[p]roof of financial responsibility

may be made by filing with the commissioner [of motor vehicles] the written certificate of any insurance carrier duly authorized to do business in this state, certifying that there is in effect a *motor vehicle liability policy* for the benefit of the person required to furnish proof of financial responsibility. Such certificate shall give the effective date of such *motor vehicle liability policy . . .* " (emphasis added). Thus, it is clear from the Vehicle and Traffic Law and the regulatory scheme that owners and operators of motor vehicles are required to obtain "motor vehicle liability policies."

Although obvious, I further note that excess policies exist only if there is an underlying policy. Therefore, there must be an underlying "motor vehicle liability policy" before there can be excess insurance coverage. Likewise, in order for an owner or operator of a motor vehicle to be in compliance with the Motor Vehicle Safety Responsibility Act and be financially secure or "insured" under that Act, the owner or operator must have a "motor vehicle liability policy" (Vehicle and Traffic Law §§ 343, 345). Thus, one cannot meet the financial security requirements of article 7 of the Vehicle and Traffic Law through excess insurance alone. Here, the insurance company issuing the tortfeasors' "motor vehicle liability policy," Reliance, is insolvent and the Travelers excess policy provides that it does not "drop down" in the event of the insolvency of the insurance company issuing any underlying policy. Consequently, as a practical matter, the B-Right truck does not have a primary "motor vehicle liability policy" in place. Even if the Reliance policy were still in effect, NHIC could not combine the coverage limits of that policy with the coverage limits of the Travelers excess policy in order to avoid triggering SUM coverage.

Although not directly on point, analogous case law of the Second Department supports that proposition. Specifically, the Second Department has rejected attempts by SUM claimants to trigger SUM coverage by combining the liability coverage limits from a motor vehicle liability policy and an umbrella policy in order to establish that the tortfeasor's bodily injury liability limits were less than those of the claimant (*see Matter of State Farm Mut. Auto. Ins. Co. v Roth*, 206 AD2d 376, *lv denied* 84 NY2d 812; *see also Matter of Federal Ins. Co. v Reingold*, 181 AD2d 769, 770-771, *lv denied* 80 NY2d 755). In *Matter of Astuto v State Farm Mut. Auto. Ins. Co.* (198 AD2d 503, 504), the Second Department held that "[t]he petitioner's attempt to base his claim on a consideration of the existence of an umbrella policy issued by a different insurer by which he was also covered is precluded by the pertinent provision of the policy on which he has made his claim." Thus, if under the existing decisional law a claimant cannot combine coverage limits from different types of policies in order to trigger SUM coverage, it logically follows that insurers are precluded from combining coverage limits from different types of policies to prevent a SUM trigger.

NHIC further contends that the "all bodily injury liability bonds and insurance policies" language of Insurance Law § 3420 (f) (2) (A) includes excess policies. Simultaneously, NHIC contends that the arbitration should have been stayed because petitioner has not

exhausted the limits of the excess policy.  Likewise, in the framed-issue hearing, the court concluded that petitioner was required to exhaust all applicable policy limits, including the Travelers excess policy, as a condition precedent to obtaining SUM benefits or proceeding to arbitration.  A comparison of NHIC's contentions, however, reveals the fatal flaw in its analysis.

Condition 9 of the SUM endorsement, entitled "Exhaustion Required," states that NHIC "will pay under this SUM coverage only after the limits of liability have been used up under all *motor vehicle bodily injury liability* insurance policies" (emphasis added).  An excess policy, however, is not a "motor vehicle liability policy" (Vehicle and Traffic Law § 345).  Therefore, it is logically inconsistent to posit that a vehicle is not an "uninsured motor vehicle" because the owner or operator is covered under an excess policy when that policy is clearly not subject to the exhaustion requirement because it is not a "motor vehicle liability policy."

Insurance Law § 3420 (f) (2) (A) provides that, "[a]s a condition precedent to the obligation of the insurer to pay under the [SUM] insurance coverage, the limits of liability of all bodily injury liability bonds or insurance policies applicable at the time of the accident shall be exhausted by payment of judgments or settlements."  I conclude that the phrase "all bodily injury liability . . . insurance policies" contained in that section does not encompass excess policies (*see Matter of Matarasso [Continental Cas. Co.]*, 82 AD2d 861, 862, *affd* 56 NY2d 264; *Mass v U.S. Fidelity and Guar. Co.*, 222 Conn 631, 639-643, 610 A2d 1185, 1190-1192).  Insurance Department Regulation 35-D, "implements" section 3420 (f) (2) of the Insurance Law and "establish[es] a standard form for SUM coverage [the prescribed SUM endorsement], in order to eliminate ambiguity, minimize confusion and maximize its utility" (11 NYCRR 60-2.0 [a], [c]; *see* 60-2.3 [f]).  The purpose of Regulation 35-D "is to interpret section 3420 (f) (2) of the Insurance Law, in light of ensuing judicial rulings and experience" (11 NYCRR 60-2.0 [c]).  Condition 9 of the prescribed SUM endorsement is identical to Condition 9 of the NHIC SUM endorsement, and provides in pertinent part that the insurer "will pay under this SUM coverage only after the limits of liability have been used up under all *motor vehicle bodily injury liability insurance policies* or bonds applicable at the time of the accident" (11 NYCRR 60-2.3 [f] [emphasis added]).  Thus, Regulation 35-D confirms that the exhaustion requirement of Insurance Law § 3420 (f) (2) (A) relates to "motor vehicle bodily injury liability" policies—not excess policies.  Therefore, because the excess policy is not a "motor vehicle bodily injury liability insurance polic[y]" (11 NYCRR 60-2.3 [f]), I conclude that petitioner has no obligation to "exhaust" the Travelers excess policy in order to obtain SUM benefits under the SUM endorsement.

The next question concerns what effect, if any, the excess policy has on NHIC's obligation to pay (as opposed to the question of coverage) its SUM coverage limits to petitioner.  This issue raises the specter of "offsets" and duplication of benefits.  Clearly, petitioner has a fixed and quantified SUM claim because his damages exceed $3 million dollars.  NHIC contends that, because the Travelers

excess policy and the SUM endorsement provide the same coverage limits, Condition 6 of the SUM endorsement, entitled "Maximum SUM Payments," precludes payment under the SUM endorsement because those policies, in effect, cancel each other out.  Thus, the question of "offsets" is clearly raised on appeal.  Condition 6 of the SUM endorsement, setting forth the terms mandated under Regulation 35-D, provides that "the maximum payment under this SUM endorsement shall be the difference between (a) the SUM limit; and (b) the *motor vehicle bodily injury liability insurance* or bond payments received" from any negligent party involved in the accident (emphasis added) (*see* 11 NYCRR 60-2.3 [a] [2]).  Thus, because the excess policy is not a "motor vehicle bodily injury liability insurance" policy, payments made thereunder cannot serve as an "offset" to the SUM coverage limit (*see* 11 NYCRR 60-2.1 [c]).

Therefore, we must look to the "Non-Duplication" condition of the SUM endorsement in order to determine whether the Travelers excess policy affects NHIC's obligation to pay SUM benefits.  Condition 11 (e) of the SUM endorsement states, "[t]his SUM coverage shall not duplicate . . . [a]ny amounts *recovered as bodily injury damages from sources other than motor vehicle bodily injury liability insurance policies or bonds*" (emphasis added).  Thus, the language of that condition suggests that it does not preclude duplication of insurance coverage but, rather, it precludes duplication of recovery by a SUM claimant.  The "sources" for purposes of non-duplication of recovery could include any personal assets of the tortfeasor applied towards the money judgment or, as in this case, excess or umbrella insurance payments from non-motor vehicle policies.  Therefore, I conclude that, pursuant to Condition 11 (e), NHIC is not required to pay any amounts for bodily injury damages that duplicate the amounts *recovered* by petitioner (*see* 11 NYCRR 60-2.3 [f]).  I emphasize that in interpreting Condition 11 (e), there is a significant distinction between "covered" by and is "recovered" from excess or umbrella policies (*see Matter of CGU Ins. Co. v Nardelli*, 188 Misc 2d 560, 568).  In other words, that condition is intended to prevent a double *recovery* for the same damages and to thereby prevent the injured party from receiving a windfall (*see Matter of Fazio v Allstate Ins. Co.*, 276 AD2d 696, 697; *see also CNA Global Resource Mgrs. v Berry*, 10 Misc 3d 1074[A], 2006 NY Slip Op 50069[U], *7).  Petitioner simply cannot get paid or recover twice for the same damages.  Under the facts presented here, if Travelers and NHIC both pay the full limits of their policies, there still can be no double recovery of damages by petitioner.  The value of petitioner's injuries exceeds $3 million and there is only $2 million in available SUM and excess insurance coverage.  Under the best case scenario, at least with respect to the SUM and excess insurance limits, petitioner is not going to recover his damages twice.  In fact, he would not recover them once.

Thus, I would affirm the judgment confirming the arbitration award.

Entered:  July 6, 2012                              Frances E. Cafarell
                                                    Clerk of the Court